**Sharon REESER and L. Scott Reeser w/h, Appellants**

v.

**NGK NORTH AMERICAN, INC. and NGK Insulators, Ltd. and NGK Metals Corporation and Yasuhito Niwa and Len Velky, Cabot Corporation, Individually and Successor in Interest to Cabot Berylco, Inc., Kawecki Berylco, Inc., a/k/a KBI Kawecki Berylco Industries, Inc. and the Beryllium Corporation and Spotts, Stevens & McCoy, Inc., Appellees.**

Superior Court of Pennsylvania.

Argued July 28, 2010.

Filed Jan. 24, 2011.

---

Ruben Honik, Philadelphia, for appellants.

Neil S. Witkes, Bala Cynwyd, for Cabot, appellee.

James C. Stroud and Douglas E. Ress, Philadelphia, for NKG, appellee.

Stephen J. Imbriglia, Philadelphia, for Spots, appellee.

BEFORE: MUSMANNO, FREEDBERG, and FITZGERALD *, JJ.

OPINION BY FREEDBERG, J.:

This matter is before the Court on Sharon Reeser's appeal[1] from the order entered by the Court of Common Pleas of Philadelphia County on September 29, 2008, granting summary judgment in favor of Appellee Spotts, Stevens & McCoy, Inc ("SSM"). We affirm.

This matter arises in relation to the operation of a beryllium[2] plant in Reading, Pennsylvania. Appellant lived in locations between .16 and 5.5 miles from the plant for over fifty years. She contends that she developed chronic beryllium disease ("CBD") as a result of exposure to beryllium particulate emitted from the plant.

CBD is a largely untreatable, granulomatous lung disorder. It is caused by an immunologic response to beryllium in the lung. Only individuals who have been exposed to beryllium and have a specific immune response to it, similar to an allergy, can develop CBD. *See Pohl v. NGK Metals Corp.*, 936 A.2d 43, 45 (Pa.Super.2007), *petition for allowance of appeal denied,* 597 Pa. 733, 952 A.2d 678 (2008).

■ SSM is an engineering firm that was retained by co-defendants who owned the plant, NGK North American, Inc.; NKG Insulators, Ltd.; NGK Metals Corp.; and Cabot Berylco, Inc., to perform "stack testing." In 1971 and 1982, SSM conducted testing at the plant, which included measuring the amount of beryllium particulate being discharged into the air. Both tests showed that the beryllium emissions at the plant significantly exceeded the allowable limit set by the United States Environmental Protection Agency. SSM informed co-defendants of the test results. It did not report the findings to any government agency or to the community.

On September 29, 2008, the trial court granted summary judgment in favor of SSM and dismissed all claims against it. One issue is raised on appeal: "Whether Spotts, Stevens, & McCoy, Inc. had a legal duty to Plaintiffs under Section 324A of the Restatement Second of Torts which makes the Trial Court'[s] grant of sum-

---

* Former Justice specially assigned to the Superior Court.

1. L. Scott Reeser is also named on the notice of appeal; however, he has not pursued any claims before this Court.

2. Appellants' expert witness, John W. Martyny, described beryllium as follows:

   Beryllium is a silver-gray metal known for its lightness, stiffness, corrosion-resistance, and ability to disperse heat rapidly. In addition, when alloyed with other metals (e.g. copper or aluminum) it tends to pass on these qualities to the primary metals. For these reasons, it is widely used both as an alloy and as a pure metal in a variety of high technology and aerospace applications. Beryllium also has a strategic importance in that it is a source of both low and high-energy neutrons when bombarded by other nuclear radiation and is therefore utilized in the manufacture of nuclear weapons.

   Expert Witness Report by John W. Martyny, at 1.

mary judgment reversible?" Brief for the Appellant, at 3.

When reviewing a grant of summary judgment, the appropriate scope and standard of review are as follows:

> In reviewing an order granting summary judgment, our scope of review is plenary, and our standard of review is the same as that applied by the trial court. Our Supreme Court has stated the applicable standard of review as follows: [A]n appellate court may reverse the entry of a summary judgment only where it finds that the lower court erred in concluding that the matter presented no genuine issue as to any material fact and that it is clear that the moving party was entitled to a judgment as a matter of law. In making this assessment, we view the record in the light most favorable to the nonmoving party, and all doubts as to the existence of a genuine issue of material fact must be resolved against the moving party. As our inquiry involves solely questions of law, our review is de novo.
>
> Thus, our responsibility as an appellate court is to determine whether the record either establishes that the material facts are undisputed or contains insufficient evidence of facts to make out a prima facie cause of action, such that there is no issue to be decided by the fact-finder. If there is evidence that would allow a fact-finder to render a verdict in favor of the non-moving party, then summary judgment should be denied.

*Jones v. Levin,* 940 A.2d 451, 452–454 (Pa.Super.2007) (internal citations omitted).

The Pennsylvania Supreme Court has stated:

> Generally, a party to a contract does not become liable for a breach thereof to one who is not a party thereto. However, a party to a contract by the very nature of his contractual undertaking may place himself in such a position that the law will impose upon him a duty to perform his contractual undertaking in such manner that third persons—strangers to the contract—will not be injured thereby; Prosser, Torts (end ed. 1955), § 85, pp. 514–519. It is not the contract *per se* which creates the duty; it is the law which imposes the duty because of the nature of the undertaking in the contract.

*Farabaugh v. Pennsylvania Turnpike Commission,* 590 Pa. 46, 911 A.2d 1264, 1283 (2006), *reargument denied,* 2007 Pa. LEXIS 762 (Pa.2007), *quoting Evans v. Otis Elevator Co.,* 403 Pa. 13, 168 A.2d 573, 575 (1961).

Section 324A of the Restatement (Second) of Torts, entitled "Liability to Third Person for Negligent Performance of Undertaking," provides:

> One who undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of a third person or his things, is subject to liability to the third person for physical harm resulting from his failure to exercise reasonable care to protect his undertaking, if
>
> (a) his failure to exercise reasonable care increases the risk of such harm, or
>
> (b) he has undertaken to perform a duty owed by the other to the third person, or
>
> (c) the harm is suffered because of reliance of the other or the third person upon the undertaking.

Appellant asserts that SSM knew the purpose of the testing was to investigate compliance with regulatory emission standards designed to protect public health. To demonstrate SSM was aware of the issue of community safety, Appellant relies

on the following testimony of an SSM engineer who conducted the 1982 stack testing:

Q. When you undertook that project, on behalf of SSM of course, did you understand or recognize that in evaluating that effluent material that its evaluation had something to do with protecting, in this case, the surrounding community or public?

A. My understanding was that the company, the Reading plant, engaged us to measure what's coming off of the stacks to determine how much was coming off.

Q. Right.

And did you understand, and did SSM understand, that knowing how much was coming off was a matter of ensuring the safety and health of those that might come in contact with the public?

. . . .

A. Yes, that's an assumption, sure.

. . . .

Q: In fact, you were aware, were you not, that there were regulations promulgated by the Federal Government concerning the threshold above which effluent from a stack emitting beryllium could not or should not legally occur, correct?

A: Yes, sir.

Deposition of John Oransky, 7/31/07, at 56–58. Thus, Appellant contends that SSM was aware it had a duty to inform the public of significant health risks, and that "the only question for summary judgment analysis is whether there are facts of record that show a breach of the duty created under the Restatement as adopted in Pennsylvania." Brief for the Appellant, at 11.

SSM contends that to be held liable under § 324A, it must have expressly undertaken a duty to protect the public, and it must have performed that duty negligently. SSM argues it did not undertake such a duty, and it did not perform its contractual obligations negligently.

█ In *Sheridan v. NGK Metals Corp.*, 2008 WL 2156718, 2008 U.S. Dist. LEXIS 40926 (2008), a persuasive, though non-binding opinion,[3] plaintiffs brought medical monitoring claims against SSM based on its failure to report the stack test findings at the Reading plant. The trial court, applying § 324A, stated that to be liable, a defendant "must *specifically* have undertaken to perform the task that he is charged with having performed negligently, for without the actual assumption of the undertaking there can be no correlative legal duty to perform that undertaking carefully." *Id.* at *3, 2008 U.S. Dist. LEXIS 40926 at *9 (internal quotations and citations omitted). The court added that there was no support for the proposition "that Section 324A gives rise to an 'implicit' or 'derivative' duty that stems from another, related duty undertaken by the defendant." *Id.* at *5, 2008 U.S. Dist. LEXIS 40926 at *15. Thus, because the district court found that SSM did not undertake a duty "to perform any corrective action to ensure that the level of beryllium emitted from the Reading plant met the [federal] standards," it granted SSM's motion to dismiss. *Id.* at *7, *8, 2008 U.S. Dist. LEXIS 40926 at *25, *29.

In affirming the trial court, the Third Circuit Court of Appeals explained that "[f]or liability to be imposed under § 324A, the defendant specifically [must have] undertaken to perform the task that [it] is charged with having performed negligent-

---

**3.** Federal district and appeals court decisions are not binding precedent on this Court. We may follow their reasoning where it is persuasive. *Chester Carriers, Inc. v. National Union Fire Ins. Co.*, 767 A.2d 555, 560 (Pa.Super.2001).

ly." *Sheridan v. NGK Metals Corp.*, 609 F.3d 239, 263 (3rd Cir.2010) (quotations and citations omitted). Further, the Court noted that the scope of the rule "is measured by the scope of the defendant's undertaking. Even if a particular injury is foreseeable ... a defendant must still have a specific duty to prevent the injury." *Id.* Thus, the Third Circuit concluded:

> [F]or Spotts, Stevens & McCoy to be liable under § 324A, plaintiffs must prove [the contractual] duty was performed negligently. If plaintiffs had asserted that Spotts, Stevens & McCoy negligently performed the tasks it *actually* undertook—that is, testing, analyzing, and monitoring the levels of beryllium, and reporting those tests *to the owner and operator* of the facility—then the assertions would sufficiently establish a claim under § 324A. But plaintiffs' Amended Complaint makes no such allegations. In order for Spotts, Stevens & McCoy to have negligently failed to warn plaintiffs of harmful beryllium exposures, it must have undertaken the responsibility of making that warning.

*Sheridan*, 609 at 263–264. *See also, Reeser v. NGK Metals Corp.*, 247 F.Supp.2d 626, 630 (E.D.Pa.2003) (finding, in the context of a fraudulent joinder claim, that plaintiffs had no colorable claim because SSM, "[a]s an engineering consulting firm engaged by the plant owner, ... owed no duty to plaintiffs who simply resided in the neighborhood of the Reading plant.").

In *Ervin v. American Guardian Life Assurance Co.*, 376 Pa.Super. 132, 545 A.2d 354 (1988), the appellant's husband underwent an electrocardiogram ("EKG") as part of a life insurance application. *Id.* at 355. The EKG was examined by a physician employed by American. Less than a month later, the applicant suffered a heart attack and died. The appellant contended that American's doctor either negligently failed to discover a cardiac abnormality or failed to report it to the decedent. In discussing the appellant's reliance on § 324A, this Court stated:

> There are no averments in the instant complaint that the defendant physician acted for the benefit of anyone other than the insurance company which had employed him. The defendant's purpose in reading the insurance applicant's EKG had not been to treat or otherwise benefit the applicant but only to advise the insurance company whether it was being asked to insure one who was a poor risk. If the defendant physician breached any duty it was a duty owed to his employer, American Guardian Life Assurance Company. He owed no similar duty to the applicant.

*Id.* at 358. Thus, this Court affirmed the trial court's entry of judgment in favor of American.

In a persuasive opinion, the district court for the Eastern District of Pennsylvania dealt with a strikingly similar issue. In *Daraio v. Carey Canada, Inc.*, 309 F.Supp.2d 706 (E.D.Pa.2004), the plaintiff worked at an asbestos plant for approximately five years. He was later diagnosed with asbestosis. Aetna was the Workers' Compensation carrier for the plant and, in that capacity, performed dust studies and made various recommendations to the plant's owner. Plaintiff argued that while Aetna was not negligent in the performance of the dust studies, it breached a duty in failing to warn the employees directly about the results of those studies. *Id.* at 709. The court found as follows:

> Aetna's "undertakings" were the dust studies and recommendations made to the ... plant's safety team. Plaintiffs argue Aetna failed to use reasonable care by not warning the employees at the ... plant directly about the dangerous levels of asbestos dust found in the

air at the ... plant. However, Aetna never assumed this "undertaking." Rather, the creation of a safe work environment remained the responsibility of [the plant's owner]. Since there is no evidence that Aetna acted negligently in the performance of the dust studies or its recommendations to [the plant's owner], there is no liability under ... Section 324A.

*Id.* at 710. Thus, the district court granted summary judgment in favor of Aetna. *See also Fackelman v. Lac d'Amiante du Quebec, LTEE*, 398 N.J.Super. 474, 942 A.2d 127 (App.Div.2008) (finding the same).

While Appellant argues that SSM should have realized that it had an obligation to protect the community, our finding that SSM must have undertaken a duty to protect the community to be held liable for breach of that duty is consistent with the view held by many other jurisdictions. *See, e.g., Leppo v. Jacobs Facilities, Inc.*, 2010 WL 3085430, 2010 U.S. Dist. LEXIS 79639 (D.Md.2010); *Asher v. Unarco Material Handling, Inc.*, 2008 WL 2636455, *3, 2008 U.S. Dist. LEXIS 49370, *9–*10 (E.D.Ky.2008) ("The threshold issue in an action under § 324A is generally whether the defendant specifically undertook to render services to the plaintiffs or for the benefit of the plaintiffs. This 'undertaking' can be established by contract or by affirmatively assuming responsibility for the safety of third persons ... Likewise, the scope of the contract or undertaking both 'defines and limits' the defendant's duty."); *Weston v. Wal–Mart Stores, Inc.*, 2008 U.S. Dist. LEXIS 19375 (S.D.Ill. 2008), *affirmed* 301 Fed.Appx. 538, 540 (7th Cir.2008) ("the duty of care to be imposed upon the defendant is limited to the extent of the undertaking"); *Jerman v. Ins. Co. of NY*, 2007 WL 2702816, *2, 2007 U.S. Dist. LEXIS 67650, *5–*6 (E.D.Pa. 2007) ("In order for a duty of care to have been imposed upon the defendant, 'he must specifically have undertaken to perform the task that he is charged with having performed negligently.' Without the actual assumption of a particular undertaking, there can be no legal duty to render those services in a non-negligent matter."); *Lyerla v. Superior Industrial Sales, Inc.*, 2004 WL 1080181, *3–*4, 2004 Mich.App. LEXIS 1219, *8–*9 (Mich.Ct. App.2004) (finding no liability for company that replaced an alarm, but did not undertake the duty to make determinations as to where the alarm should be mounted or if visual warnings were also needed); *Dekens v. Underwriters Labs. Inc.*, 107 Cal. App.4th 1177, 132 Cal.Rptr.2d 699 (2003); *Blewitt v. Man Roland, Inc.*, 168 F.Supp.2d 466, 469–470 (E.D.Pa.2001) ("[I]n order for liability to be imposed upon the actor, he must specifically have undertaken to perform the task that he is charged with having performed negligently, for without the actual assumption of the undertaking there can be no correlative legal duty to perform that undertaking carefully. Stated otherwise, in order to prevail under § 324A, a plaintiff must establish more than the fact that a defendant negligently performed a duty owed to another which he or she should have foreseen as necessary to the safety of another."); *Banzhaf v. ADT Security Systems Southwest, Inc.* 28 S.W.3d 180 (Tex.App.2000), *petition for review denied* January 25, 2001; *McAtee v. Fluor Constructors Int'l, Inc.*, 1999 WL 685928, 1999 U.S.App. LEXIS 21040 (6th Cir.1999); *Easter v. Percy*, 168 Ariz. 46, 810 P.2d 1053 (App. 1991) (finding that the plaintiff's argument failed because, *inter alia*, the service the defendant contracted to provide was inspection for compliance with plans, not for purposes of safety).

Appellant relies on the *Evans* and *Farabaugh* cases in asserting liability. In *Ev-*

*ans,* the plaintiff brought a trespass action after being injured when an elevator owned by his employer and serviced by Otis Elevator Company ("Otis") struck something, causing the cage to fall. 168 A.2d at 574–575. The contract between Otis and the owner of the elevator required that Otis examine the elevator and perform maintenance on it. Otis had express responsibility to " 'examine, lubricate and adjust the following necessary equipment: COA: Interlocks, Car gates, Freight gates, Hall buttons. Hoistway doors, door hinges, door latches, door knobs and when necessary: Oil, grease, rope preservatives and cleaning materials.' " *Id.* at 575. The plaintiff claimed that Otis was negligent in failing to properly inspect the elevator *and in failing to notify the plaintiff or the owner of the elevator about the dangerous condition. Id.* The Pennsylvania Supreme Court provided:

> The orbit of Otis' duty to third persons is measured by the nature and scope of his [sic] contractual undertaking with [the owner of the elevator] and, if, as presently appears, Otis undertook to inspect the elevator at regular intervals, and, if the elevator was in a defective or dangerous condition discoverable by reasonable inspection, Otis would be liable to third persons, regardless of any privity of contract, who might be injured by Otis' failure to properly perform its contractual undertaking of inspection.

*Id.* at 576. The Supreme Court concluded that because Otis' contractual undertaking required it to inspect and examine the elevator, it owed a duty to third persons, including plaintiff. Because Otis failed "to discover, by reasonable inspection and examination, the defective condition ... Otis breached its duty to [plaintiff]," and the Supreme Court held that the trial court properly denied Otis' motion for judgment notwithstanding the verdict. *Id.* at 578.

In *Farabaugh,* appellant's husband was killed while driving an off-highway dump truck in the course of his employment. Appellant sued the owner of the construction site where the accident took place and the corporation that was the construction manager of the project. The construction manager undertook the contractual duty to:

> [A]dminister, manage, and oversee the construction of several sections of the expressway. Its responsibilities included reviewing and monitoring the on-site safety procedures of the other contractors. When viewed in a light most favorable to the Plaintiff, the record suggests that [the construction manager's] supervision encompassed haul roads, given testimony that [the construction manager] inspectors had authority to take action regarding safety violations on haul roads and that its inspectors had the authority to stop work if they perceived a dangerous condition.

911 A.2d at 1268 (footnotes omitted). The corporate construction manager argued that it owed no duty to the decedent. The appellant responded that the construction manager had a "social duty" under § 324A because of its contractual obligations to inspect the worksite and to provide safety oversight. In support of her position, the appellant submitted an expert report stating that the construction manager failed to perform its contractual duties in relation to the road where the accident occurred. Reversing the trial court's grant of summary judgment, the Pennsylvania Supreme Court stated:

> Accordingly, we reject [the construction manager's] suggestion that Section 324A cannot apply to negligent performance of a contractual inspection obligation because it would require this Court to overturn the longstanding prec-

edent in *Otis Elevator*. Moreover, the plain language of Section 324A merely requires an undertaking to "render services for another," which we find to encompass the rendering of inspection services. As in Otis Elevator, we conclude that it was foreseeable that a failure to perform properly the active safety role assumed by [the construction manager] under its contract ... could result in injuries to the workers on the site. Accordingly, we hold that [the construction manager] owed a duty to perform its safety obligations under its contract ... so as not to injure Decedent.

*Id.* at 1283–1284. Thus, the Supreme Court remanded the matter for a jury to consider the nature and scope of the construction manager's contractual undertaking and whether it had breached its duties. *Id.* at 1284.

Both *Evans* and *Farabaugh* differ significantly from the instant matter. In each of those cases, the defendant undertook responsibility for the safety of the subject of the contract, *i.e.*, the elevator and the construction site. In doing so, the defendants' duty extended to third parties whose use of the elevator in *Evans* and the construction site in *Farabaugh* was foreseeable. In the instant case, SSM undertook no duty with respect to performing remedial action to enhance safety. Rather, SSM undertook the duty to test the emissions and report correctly the results to the owner of the Reading plant; it did not undertake responsibility for the maintenance or safe design of the facility. Further, unlike in *Evans* and *Farabaugh*, there is no contention that SSM negligently performed its contractual duty of monitoring and accurately reporting the test results of the plant owner. *See Sheridan*, 609 F.3d at 264 (distinguishing *Farabaugh*).

The result sought by Appellant would require that an independent consultant, hired to conduct testing and report the results to an owner of a facility, must report the results to the public if there is a need for remedial relief. Such a rule would inhibit owners of such a facility from hiring qualified, independent consultants to learn whether a dangerous condition exists. Thus, it would impede discovery and corrective action. Section 324A does not impose such a duty.

Order affirmed.

Judge Musmanno Notes Dissent.