**George and Jackie CASSELBURY,**
**Appellants**

v.

**AMERICAN FOOD SERVICE,**
**Appellee.**

Superior Court of Pennsylvania.

Submitted Aug. 29, 2011.

Filed Oct. 12, 2011.

Mary D. Walsh–Dempsey, Scranton, for appellants.

Gary L. Weber, Williamsport, for appellee.

BEFORE: GANTMAN, DONOHUE and MUNDY, JJ.

OPINION BY DONOHUE, J.:

Appellants, George Casselbury ("Mr. Casselbury") and Jackie Casselbury ("Mrs. Casselbury" individually, and collectively with Mr. Casselbury, "the Casselburys"), appeal from the trial court's December 29, 2010 order granting summary judgment in favor of Appellee, American Food Service ("AFS"). We reverse and remand.

The record reflects that Mr. Casselbury worked at the OSRAM/Sylvania ("OS-RAM") industrial plant in Towanda, Pennsylvania. Pursuant to a contract between OSRAM and AFS, AFS provided food services at the OSRAM cafeteria. On July 24, 2006, Mr. Casselbury slipped and fell while walking near a dumpster outside the OSRAM plant, suffering injuries. Mr. Casselbury believed he slipped on cooking oil that was leaking from the dumpster. Subsequently, the Casselburys initiated this tort action against AFS, alleging that AFS breached its duty to dispose of cooking oil properly, and that AFS' breach of its duty caused physical injuries to Mr. Casselbury. Mrs. Casselbury asserted a loss of consortium claim.

After the parties conducted discovery, AFS filed a motion for summary judgment pursuant to Pa.R.C.P. 1035.2. The trial court heard oral argument on May 7, 2010 and granted AFS' motion on December 29, 2010. This timely appeal followed.[1]

---

1. The record reveals that the Casselburys failed to serve a copy of the notice of appeal on the trial court in accordance with Pa. R.A.P. 906(a)(2). Accordingly, the trial court never entered an order pursuant to Pa.R.A.P. 1925. Upon learning of the Casselburys' failure to serve a copy of the notice of appeal, the trial court issued an opinion suggesting that this Court remand the matter to the trial court for the issuance of an opinion addressing the Casselburys' appellate issues. Trial Court Opinion, 2/7/11, at 1–2.

When an appellant fails to serve the notice of appeal on the trial court per Rule 906(a)(2),

The Casselburys raise three arguments for our review:

    A.  Whether [the Casselburys] have put forth sufficient evidence to establish that [AFS] owed a duty to [Mr. Casselbury] and such duty was breached?

    B.  Whether [the Casselburys] have established a genuine issue of material fact, through the witness' testimony, so as to preclude the granting of summary judgment?

    C.  Whether the expert report of Kenneth T. Vail, in and of itself, should have preclude [sic] the granting of summary judgment?

The Casselburys' Brief at 2.

Each of the Casselburys' issues challenges the trial court's finding that no triable issue of fact exists as to whether AFS owed a duty to Mr. Casselbury and breached it. We will therefore address the Casselburys' issues together. Rule 1035.2 provides that summary judgment is appropriate under the following circumstances:

> (1) whenever there is no genuine issue of any material fact as to a necessary element of the cause of action or defense which could be established by additional discovery or expert report, or
>
> (2) if, after the completion of discovery relevant to the motion, including the production of expert reports, an adverse party who will bear the burden of proof at trial has failed to produce evidence of facts essential to the cause of action or defense which in a jury trial would re-

quire the issues to be submitted to a jury.

Pa.R.C.P. 1035.2.

■■ We review the trial court's order granting summary judgment according to the following standard:

> When considering a motion for summary judgment, the trial court must take all facts of record and reasonable inferences therefrom in a light most favorable to the non-moving party. In so doing, the trial court must resolve all doubts as to the existence of a genuine issue of material fact against the moving party, and, thus, may only grant summary judgment where the right to such judgment is clear and free from all doubt.
>
> On appellate review, then, an appellate court may reverse a grant of summary judgment if there has been an error of law or an abuse of discretion. But the issue as to whether there are no genuine issues as to any material fact presents a question of law, and therefore, on that question our standard of review is *de novo*. This means we need not defer to the determinations made by the lower tribunals.

*Summers v. Certainteed Corp.*, 606 Pa. 294, 307, 997 A.2d 1152, 1159 (2010) (internal citations and quotation marks omitted).

■■ In order to prevail on a negligence cause of action, Mr. Casselbury must establish that AFS owed him a duty, that AFS breached that duty, and that Mr. Casselbury suffered damage as a result of

---

this Court has discretion to take any appropriate action, including a remand to the trial court for the completion of omitted procedural steps. *Meadows v. Goodman*, 993 A.2d 912, 914 (Pa.Super.2010) (*citing* Pa.R.A.P. 902). The appellant's lack of compliance with Rule 906(a)(2) does not affect the validity of the appeal, however, and a remand is not required. *Id.*

In the instant matter, the trial court issued an opinion on December 29, 2010 accompanying its order granting summary judgment in favor of AFS. That opinion addresses the issues the Casselburys raise in this appeal. While we do not condone the Casselburys' procedural error, we conclude that a remand is unnecessary because the error has not hampered this Court's review.

AFS' breach. *See Merlini v. Gallitzin Water Auth.*, 602 Pa. 346, 354, 980 A.2d 502, 506 (2009). The Casselburys argue that AFS' duty in this case arises from the contract between AFS and OSRAM. The Casselburys rely on § 324A of the Restatement (Second) of Torts, which provides as follows:

§ 324A Liability to Third Person for Negligent Performance of Undertaking

One who undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of a third person or his things, is subject to liability to the third person for physical harm resulting from his failure to exercise reasonable care to protect his undertaking, if

(a) his failure to exercise reasonable care increases the risk of such harm, or

(b) he has undertaken to perform a duty owed by the other to the third person, or

(c) the harm is suffered because of reliance of the other or the third person upon the undertaking.

Restatement (Second) of Torts, § 324A.

Addressing the applicability of § 324A to a case where the alleged duty arises from a contract, our Supreme Court has written:

Generally, a party to a contract does not become liable for a breach thereof to one who is not a party thereto. However, a party to a contract by the very nature of his contractual undertaking may place himself in such a position that the law will impose upon him a duty to perform his contractual undertaking in such manner that third persons— strangers to the contract—will not be injured thereby[.] It is not the contract *per se* which creates the duty; it is the law which imposes the duty because of

the nature of the undertaking in the contract.

*Farabaugh v. Pa. Tpk. Comm'n*, 590 Pa. 46, 77–78, 911 A.2d 1264, 1283 (2006). In *Farabaugh*, the plaintiff alleged that the defendant construction manager breached its duty to maintain the safety of a haul road on the construction site. *Id.* at 68–69, 911 A.2d at 1278. The plaintiff's decedent was killed when his truck rolled over while traversing an allegedly defectively maintained haul road. *Id.* at 54; 911 A.2d at 1268–69. The plaintiff's decedent worked for a contractor that did not have a direct contractual relationship with the construction manager. *Id.* at 52–54, 911 A.2d at 1268–69. The Supreme Court concluded that summary judgment in favor of the construction manager was inappropriate, because the construction manager was contractually bound to take an active role in ensuring the safety of the construction site. *Id.* at 52, 76–77, 911 A.2d at 1267–68, 1282. Thus, the construction manager owed a duty to third parties who relied on the safety of the construction site. *Id.*

Likewise, in *Evans v. Otis Elevator Co.*, 403 Pa. 13, 168 A.2d 573 (1961), the Supreme Court affirmed a judgment in favor of the plaintiff employee against the company that plaintiff's employer hired to maintain an elevator. The plaintiff sustained injuries when the elevator stopped suddenly and a roof board from the elevator fell on the plaintiff's head. *Id.* at 17–18, 168 A.2d at 575. The elevator company argued it had no duty to the employee, who was not a party to the contract. *Id.* The Supreme Court disagreed:

If a person undertakes by contract to make periodic examinations and inspections of equipment, such as elevators, he should reasonably foresee that a normal and natural result of his failure to properly perform such undertaking might result in injury not only to the owner of

the equipment but also third persons, including the owner's employees[.]

*Id.* at 18, 168 A.2d at 575–76.

This Court recently had occasion to consider § 324A in *Reeser v. NGK North American, Inc.,* 14 A.3d 896 (Pa.Super.2011). In *Reeser,* the plaintiff suffered from chronic beryllium disease ("CBD"), as a result of particles emanating from a beryllium plant near the plaintiff's home. *Id.* at 897. Among the parties sued by the plaintiff was an engineering firm hired by the plant to measure the amount of beryllium particles discharged into the air. *Id.* The engineering firm's tests revealed that the amount of beryllium particles discharged from the plant far exceeded allowable levels as determined by the Environmental Protection Agency ("EPA"), and the firm reported the results of its tests to the plant but took no steps to warn the public. *Id.* Though the plaintiff was not a party to the contract between the engineering firm and the plant, the plaintiff alleged that the firm should have known that the purpose of the tests it was hired to conduct was to protect the public from unsafe levels of beryllium in the atmosphere. *Id.* at 898.

Upon reviewing case law from other states and from our federal courts, this Court concluded that the engineering firm did not owe a duty to the plaintiff because it did not specifically undertake an obligation to protect the public. *Id.* at 898–901. That is, the only obligation the engineering firm undertook was to measure and report to the plant the levels of beryllium emanating from the plant. This Court distinguished *Farabaugh* and *Otis Elevator* as follows:

> In each of those cases, the defendant undertook responsibility for the safety of the subject of the contract, i.e., the elevator and the construction site. In doing so, the defendants' duty extended to third parties whose use of the elevator in Evans and the construction site in *Farabaugh* was foreseeable. In the instant case, [the engineering firm] undertook no duty with respect to performing remedial action to enhance safety. Rather, [the engineering firm] undertook the duty to test the emissions and report correctly the results to the owner of the Reading plant; it did not undertake responsibility for the maintenance or safe design of the facility. Further, unlike in [*Otis Elevator*] and *Farabaugh,* there is no contention that [the engineering firm] negligently performed its contractual duty of monitoring and accurately reporting the test results of the plant owner.

*Id.* at 903.

In the instant matter, the trial court concluded that AFS was not responsible for maintaining the area around the OSRAM dumpster where Mr. Casselbury slipped, and therefore did not breach any duty to Mr. Casselbury:

> To begin, there is no evidence of any negligence by [AFS] to the point of placing the oil in the dumpster. [The Casselburys'] evidence discloses that the oil was leaking from the dumpster, as opposed to having been spilled on the sidewalk on the way to the dumpster.
>
> [AFS] bears no responsibility for the oil once it is in the dumpster.

Trial Court Opinion, 12/29/10, at 5. On that basis, the trial court granted summary judgment in favor of AFS.

The record reveals that Mr. Casselbury slipped and fell while walking to the OSRAM cafeteria. N.T., 10/8/08 (Casselbury Deposition), at 25–28. Mr. Casselbury was approximately three feet away from a dumpster when he fell. *Id.* at 29. His feet came out from underneath him all at once and he landed hard on his hands and

knees. *Id.* at 30. When Mr. Casselbury got up, his hands felt slippery and he noticed a faint smell of cooking oil on them. *Id.* at 36. Mr. Casselbury had no doubt that the substance on his hands was cooking oil. *Id.* at 75–76.

Gary Haverly ("Haverly"), a maintenance person at OSRAM, was the OSRAM employee who cleaned up the site of Mr. Casselbury's fall. N.T., 3/10/09 (Haverly Deposition), at 5–6. When Haverly arrived at the scene, he noticed grease dripping from a drain hole in the dumpster. *Id.* at 6. Based on its color and scent, Haverly believed the greasy substance was cooking oil. *Id.* at 10, 19.

Steven Sturdevant ("Sturdevant"), a senior technician in charge of hazardous and residual waste at OSRAM, testified that used cooking oil was supposed to be disposed of in sealed pails. N.T., 6/30/09 (Sturdevant Deposition), at 6, 9–11. OSRAM supplied the pails to AFS for the purpose of disposing of cooking oil. *Id.* at 12. Empty jars or boxes of cooking oil were to be placed in trash bags before they went into the dumpster. *Id.* at 11. AFS personnel were aware of their obligation to dispose of cafeteria trash in OSRAM's dumpsters, and they were aware of the proper procedure for disposing of cooking oil. N.T., 12/8/08 (Walsh Deposition), at 13; N.T., 12/8/08 (Bryniarski Deposition), at 16–20; N.T., 7/1/09 (Wilkins Deposition), at 19–22.

An OSRAM employee reported that, shortly after Mr. Casselbury's fall, he looked in the dumpster and saw an old box of cooking oil. N.T., 6/30/09 (Sturdevant Deposition), at 22–23. That box of oil should not have been in there unless it was first placed in a plastic bag. *Id.* The record further reflects that OSRAM had holes drilled in the bottoms of dumpsters to prevent the build-up of ice in the dumpsters in the wintertime. N.T. 7/1/09 (Wil-

kins Deposition), at 24–25. Ice build-up in the dumpsters poses a hazard to the trash collectors. *Id.* AFS was aware of the drainage holes in the dumpsters. N.T., 12/8/08 (Walsh Deposition), at 33.

■ Based on the foregoing, we conclude that the trial court erred in granting summary judgment in favor of AFS. Concerning the existence of a duty from AFS to Mr. Casselbury, the record clearly reflects that AFS undertook responsibility for the safe disposal of cooking oil in OSRAM's dumpsters. AFS was required to dispose of the cooking oil in sealed pails provided by OSRAM, presumably to prevent oil from leaking through the drainage holes in the dumpsters. We conclude that our Supreme Court's analysis in *Farabaugh* and *Otis Elevator* governs the instant facts. In both of those cases, the defendant undertook responsibility for maintaining the safety of the object that allegedly caused the injury—a haul road in *Farabaugh* and an elevator in *Otis Elevator*. Likewise, AFS was responsible for safe disposal of cooking oil, the object that allegedly caused the injury in the instant case.

AFS argues that *Farabaugh* and *Otis Elevator* are distinguishable because AFS was not responsible for the maintenance of the dumpster or the maintenance of the surface where Mr. Casselbury slipped. The result we reach here does not charge AFS with responsibility for the dumpster and/or the ground surrounding the dumpster. The record reflects that AFS undertook to dispose of used cooking oil in such a way that the oil would not leak out of the dumpster and create a hazard for passersby.

In this regard, the instant facts are analogous to those of *Beury v. Hicks*, 227 Pa.Super. 476, 323 A.2d 788 (1974). In *Beury*, the defendant utility company was

responsible for the maintenance of power lines, and attendant to that duty the utility company undertook to prune trees in proximity to the power lines. *Id.* at 789. The plaintiff's decedent suffered fatal injuries when a dead tree limb fell through the windshield of his car. *Id.* Witnesses testified that the tree had been obviously dead for several years prior to the accident. *Id.* This Court concluded that the plaintiff alleged sufficient facts to give rise to a duty on the part of the utility company pursuant to § 324A, since the company's failure to remove dead trees and tree branches near the road posed a clear danger to vehicles and persons traversing the road. *Id.* at 789–90.

The defendant in *Beury* was not contractually responsible for the safety of the road, just as AFS was not contractually responsible for maintaining the dumpsters or the ground around the dumpsters. In both cases, however, the defendants undertook a contractual duty that, if not done properly, could create hazardous conditions for third parties traversing areas not specifically covered by the defendants' contractual obligations.

In summary, AFS, as part of its contractual services to OSRAM, undertook to dispose of cooking oil in sealed containers in OSRAM's dumpsters. AFS' failure to dispose of cooking oil properly posed a hazard to third parties, thus bringing this case clearly within the purview of § 324A. Mr. Casselbury and Haverly testified that Mr. Casselbury slipped on cooking oil that was leaking from a nearby dumpster. Another witness observed an old box of cooking oil in the dumpster. Considering the facts of record in a light most favorable to the Casselburys, as the non-moving party, we believe that triable issues of fact exist concerning whether AFS breached its duty to dispose of cooking oil properly, and whether that breach was the cause of Mr.

Casselbury's alleged injuries. We therefore reverse the order granting summary judgment in favor of AFS.

Order reversed. Case remanded for further proceedings. Jurisdiction relinquished.