J-A21025-14

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| IN RE: HILDA KILIJIAN IRREVOCABLE TRUST | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| APPEAL OF: LYNNE BOGHOSSIAN | No. 3175 EDA 2013 |

Appeal from the Order Entered October 10, 2013
In the Court of Common Pleas of Montgomery County
Orphans' Court at No(s): 2009-2314

BEFORE:  BOWES, J., OTT, J., and STRASSBURGER, J.[*]

MEMORANDUM BY OTT, J.:　　　　　　**FILED DECEMBER 19, 2014**

Lynne Boghossian appeals from the order entered October 10, 2013, in the Court of Common Pleas of Philadelphia County, granting summary judgment in favor of the Hilda Kilijian Irrevocable Trust ("HKIT"), and dismissing Boghossian's second amended complaint with prejudice.  On November 21, 2006, Hilda Kilijian created the HKIT.  She has no children but has two nieces, Boghassian and Lesley Brown, who are sisters.  Upon Kilijian's death, the HKIT is to be distributed to Brown and members of her

_____

[*] Retired Senior Judge assigned to the Superior Court.

family.[1]  Boghossian is not named as a co-trustee or beneficiary under the HKIT.  Boghossian instituted this action, largely on the basis that the HKIT was created and executed under the undue influence of Brown and her husband, John F. Brown.  In granting the HKIT's motion for summary judgment, the orphans' court found there was no evidence that the trust was formed and funded under undue influence.  On appeal, Boghossian raises the following three claims:  (1) the orphans' court abused its discretion and/or erred when it considered a stipulation that was not part of the current record but was from a companion matter, and depositions taken in violation of that stipulation; (2) the orphans' court abused its discretion by granting summary judgment prematurely because discovery was still open, no trial date was set, and less than four months of discovery had commenced in the matter; and (3) the orphans' court abused its discretion and/or erred when it ignored evidence of a confidential relationship, failed to shift the burden to the HKIT, and decided all inferences in favor of the HKIT while ignoring the weakened intellect of Kilijian.[2]  Boghossian's Amended Brief at 14.  Based on the following, we affirm.

---

[1]  Specifically, 50% to Brown, 25% to Brown in trust for her daughter, and 25% to Brown in trust for her son.

[2]  We have reordered the first and second arguments based on the nature of our analysis.

The facts underlying this appeal are well-known to the parties, and we need not recite them herein. *See* Orphans' Court Opinion, 10/10/2013, at 2-5.[3] On October 10, 2013, the orphans' court granted the HKIT's motion for summary judgment, finding Boghossian had "presented no facts which could establish directly that Ms. Kilijian was unduly influenced by the Browns or by any other party at the time of the formation of the Trust." *Id.* at 9. The court also dismissed Boghossian's complaint with prejudice. Seven days later, Boghossian filed a motion for reconsideration. The court denied the motion the next day because Boghossian did not file exceptions within 20 days pursuant to Pa.O.C.R. 7.1. On November 12, 2013, Boghossian filed this timely appeal.[4]

We begin with our well-settled standard of review:

_____

[3] We note Kilijian was adjudicated an incapacitated person in a separate proceeding before the orphans' court on September 30, 2010, and Brown was appointed plenary permanent guardian of her person. Anna Sappington now serves as plenary permanent guardian of the estate of Hilda Kilijian. *See* Mongomery County Court of Common Pleas, Orphans' Court Division, Docket No. 2009-X2351. On September 24, 2010, the orphans' court confirmed the appointment of Bryn Mawr Trust Company as successor trustee of the HKIT, to serve with Brown. On January 22, 2013, the court accepted the resignation of Bryn Mawr Trust Company as trustee and confirmed the appointment of Haverford Trust Company as successor trustee.

[4] It merits mention that generally, an appellant has 30 days to file a notice of appeal from a final order. *See* Pa.R.A.P. 903. Here, Boghossian's notice was timely, as the due date fell on the weekend and because Monday, November 11, 2013, was a court holiday, Veteran's Day (observed).

Our standard of review of the findings of an Orphans' Court is deferential.

When reviewing a decree entered by the Orphans' Court, this Court must determine whether the record is free from legal error and the court's factual findings are supported by the evidence. Because the Orphans' Court sits as the fact-finder, it determines the credibility of the witnesses and, on review, we will not reverse its credibility determinations absent an abuse of [] discretion.

*In re Estate of Harrison*, 2000 PA Super 19, 745 A.2d 676, 678 (Pa. Super. 2000) (internal citations omitted). If the court's findings are properly supported, we may reverse its decision only if the rules of law on which it relied are palpably wrong or clearly inapplicable. *See id.* at 678-79.

*Owens v. Mazzei*, 847 A.2d 700, 706 (Pa. Super. 2004).

In Boghossian's first argument, she asserts the orphans' court abused its discretion and/or erred when it considered a stipulation that was not part of the current record but was from a companion matter, and depositions taken in violation of that stipulation. Boghossian's Amended Brief at 29-30. She claims the court erred in considering these depositions "taken in violation of [a] governing stipulation without first allowing the proper cross examination" by her counsel. *Id.* at 30.

By way of background, Boghossian avers that in 2009, she commenced an action in Montgomery County Court of Common Pleas, Orphans' Court Division, Docket No. 09-2351, in which she sought the appointment of a guardian for Kilijian. Boghossian states the parties conducted discovery, but that that evidence is "completely unrelated to the claims" she asserts in the present matter as it was "limited solely to the

issue of the competence of Hilda Kilijian at that time and, therefore, whether she needed the appointment of a guardian for her estate and her person." *Id.* at 30 (emphasis removed). Moreover, she states that in violation of a stipulation, entered into by the parties in the competency proceeding, John Brown scheduled three Florida depositions covered by the parties' stipulation on dates in which Boghossian's counsel was unavailable and did not participate.[5] *Id.* at 32-34. Boghossian concludes it was an error by the orphan's court to consider these improper depositions.

Before addressing the merits of this issue, we must determine whether Boghossian has properly preserved this claim for appellate review. Boghossian raised this argument for the first time in her motion for reconsideration of the orphans' court's October 10, 2013, order granting the HKIT's motion for summary judgment. *See* Plaintiff, Lynn Boghossian's Motion for Reconsideration of the Court's Order Dated October 10, 2013 Granting Defendant, Hilda Kilijian Irrevocable Trust's Motion for Summary Judgment, 11/7/2013, at 16-25. As noted above, the orphans' court denied

---

[5] The stipulation provided the depositions could be conducted only "under very specific guidelines," including a date convenient to all counsel. Boghossian's Brief at 31. Contrary to Boghossian's claim here, a review of the record reveals that another attorney from the law firm of Boghossian's counsel made telephonic appearances at each of the three depositions and did raise objections. *See*, *i.e.*, Deposition of Michael Striar, 3/11/2011, at 15, 22, 25.

Boghossian's motion for reconsideration pursuant to Pa.O.C.R. 7.1. ***See***

Order, 11/8/2013.

Pennsylvania Orphans' Court Rule 7.1 governs the procedure for

challenging the entry of a final order, decree, or adjudication in orphans'

court proceedings. The rule provides, in relevant part:

> (a) General Rule. Except as provided in Subdivision (e), no later than twenty (20) days after entry of an order, decree or adjudication, a party may file exceptions to any order, decree or adjudication which would become a final appealable order under Pa.R.A.P. 341(b) or Pa.R.A.P. 342 following disposition of the exceptions. If exceptions are filed, no appeal shall be filed until the disposition of exceptions except as provided in Subdivision (d) (Multiple Aggrieved Parties). Failure to file exceptions shall not result in waiver if the grounds for appeal are otherwise properly preserved.
>
> (b) Waiver. Exceptions may not be sustained unless the grounds are specified in the exceptions and were raised by petition, motion, answer, claim, objection, offer of proof or other appropriate method.
>
> …
>
> (g) Exceptions. **Exceptions shall be the exclusive procedure for review by the Orphans' Court of a final order, decree or adjudication. A party may not file a motion for reconsideration of a final order**.

Pa.O.C.R. 7.1(a), (b), (g) (emphasis added).

We agree with the orphans' court that to the extent that Boghossian

attempts to raise this argument for the first time in her motion for

reconsideration, the issue is waived. Pursuant to Rule 7.1(g), the motion for

reconsideration was an improper filing, and Boghossian failed to raise the

claim either in exceptions to the orphan's court order or by motion prior to

the entry of the order. Accordingly, we conclude the claim is not preserved for our review. *See In re Estate of Rosser*, 821 A.2d 615, 619 (Pa. Super. 2003) (new claims raised in motion for reconsideration were waived for failure to properly preserve in accordance with Pa.O.C.R. 7.1(g)), appeal denied, 831 A.2d 600 (Pa. 2003).

In Boghossian's second argument, she claims the orphans' court abused its discretion in granting the HKIT's motion for summary judgment because the motion "was not ripe for consideration and was premature as only a little over four months of discovery had expired, and discovery was being propounded and depositions were to be noticed by [Boghossian] as the additional discovery was necessary to establish additional genuine issues of material fact." Boghossian's Amended Brief at 20. Moreover, Boghossian asserts the court improperly granted summary judgment "while outstanding discovery requests were not answered by [the] HKIT, and [was] in direct disregard of the discovery stipulation signed by the parties." Boghossian's Amended Brief at 22. Specifically, she claims discovery was delayed by the following: (1) there was a September 8, 2009 order, staying all discovery, that was not lifted until June 3, 2011; and (2) the defendants chose to file motions for judgment on the pleadings rather than commence discovery after that stay was lifted. *Id.* at 23-26. Boghossian avers that in September 2012, she attempted to commence discovery by serving interrogatories but none of the defendants complied with her request as they

believed it was "premature" until the court decided their motions for judgment on the pleadings, which did not occur until January 31, 2013, when it entered its order. *Id.* at 26. Therefore, she states that "no discovery was permitted until February 1, 2013 and it is only the defendant HKIT that failed to respond to [her] initial discovery effort[.]" *Id.* at 29.

With respect to this claim, we are guided by the following:

> Although parties must be given reasonable time to complete discovery before a trial court entertains any motion for summary judgment, the party seeking discovery is under an obligation to seek discovery in a timely fashion. *Kerns v. Methodist Hosp.*, 393 Pa.Super. 533, 574 A.2d 1068, 1074 (1990). Where ample time for discovery has passed, the party seeking discovery (and opposing summary judgment) is under an obligation to show that the information sought was material to their case and that they proceeded with due diligence in their attempt to extend the discovery period. *Id.,* 574 A.2d at 1074.

*Reeves v. Middletown Athletic Ass'n*, 866 A.2d 1115, 1124 (Pa. Super. 2004). *See also Fort Cherry School Dist. v. Gedman*, 894 A.2d 135, 140 (Pa. Super. 2006) (reasoning "[t]he Pennsylvania Rules of Civil Procedure do not give [parties] an unlimited amount of time to conduct discovery"). However, this Court has previously stated that the purpose of Rule 1035.2 "is to eliminate cases prior to trial where a party cannot make out a claim or defense after relevant discovery has been completed; the intent is not to eliminate meritorious claims prematurely before relevant discovery has been completed." *Burger v. Owens Illinois, Inc.,* 966 A.2d 611, 618 (Pa. Super. 2009) (quotation omitted).

Here, a review of the certified record reveals that Boghossian filed this action in the Court of Common Pleas of Delaware County, Civil Division ("Delaware County court"). The defendants, which did not include the HKIT because it was not named in the original complaint,[6] sought to have the matter transferred to the Court of Common Pleas of Montgomery County, Orphans' Court Division. On September 8, 2009, the Delaware County court granted the petition to transfer and stayed discovery until the orphans' court decided whether it was going to accept the transfer. Nevertheless, on September 30, 2010, the parties entered a stipulation in the related matter at Docket No. 09-2351, which provided, in relevant part:

> Any party and counsel who have entered an appearance in the underlying action originally designated CCP Delaware County No. 09-153 which was thereafter transferred to Montgomery County Orphans Court or may have an interest in the potential claims that might be asserted against the Hilda Kilijian Irrevocable Trust ("HKIT") (including the beneficiaries, [Brown's son and daughter] and their counsel or the trustees of the HKIT and their counsel) shall have the right to proceed under the Court's May 6, 2010 Order issuing a Commission to Obtain Testimony and Documents Outside the Commonwealth, and promptly subpoena, notice, and schedule the depositions authorized under that Order on all topics relevant to the claims asserted in the underlying action and the potential claims that could arise against the HKIT from those alleged fact patterns.
>
> …
>
> Nothing in this paragraph shall preclude any party from conducting other discovery and is in no way intended to establish a discovery plan and/or discovery deadline.

---

[6] The original defendants were Kilijian, Brown, and Brown's husband.

R.R. 385a-386a, Stipulation of Counsel, 9/30/2010.

On June 3, 2011, the Montgomery County orphans' court accepted jurisdiction and granted Boghossian leave to file a second amended complaint. On October 6, 2011, Boghossian filed a second amended complaint, naming the HKIT as a defendant. All defendants filed preliminary objections, which were dismissed December 1, 2011. The Browns and the HKIT filed answers with new matter, as well as motions for judgment on the pleadings. During this time, on September 18, 2012, Boghossian requested her first set of interrogatories, which were addressed to defendants, Brown and John Brown, relating to their answer with new matter to her second amended complaint. *See* R.R. 1493a-1541a. On January 31, 2013, the court determined that based upon Boghossian's voluntary dismissal of Counts I, II, and III of her second amended complaint and oral argument, the court dismissed those counts with prejudice but declined to dismiss Count IV as it related to the HKIT. Thereafter, the HKIT filed a motion for summary judgment, which the orphans' court granted on October 10, 2013.

The orphans' court found the following:

> [Boghossian]'s assertion that additional discovery is needed at this time and that this motion is premature is unavailing. [Boghossian] commenced this action in January of 2009, and has been engaged in substantial discovery over a period of several years, and entered into a stipulation concerning discovery in September of 2010. [Boghossian] has had adequate time to develop facts in support of her allegations.

Orphans' Court Opinion, 10/10/2013, at 11.

We agree with the orphans' court that Boghossian's discovery argument is meritless on several grounds. First, other than several bald statements that information sought "was necessary to establish additional genuine issues of material fact,"[7] she develops no meaningful argument as to what facts are still at issue and how they are material to her case. "We will not consider these bald assertions in our analysis of this issue." *Reeves*, 866 A.2d at 1124, *citing* **Eichman v. McKeon**, 824 A.2d 305, 319 (Pa. Super. 2003), *appeal denied*, 839 A.2d 352 (Pa. 2003). Second, Boghossian has not demonstrated that she "proceeded with due diligence in [her] attempt to extend the discovery period." *Reeves*, 866 A.2d at 1124. As of September 30, 2010, by stipulation of the parties, Boghossian was put on notice that she may depose individuals with respect to "the potential claims that could arise against the HKIT from those alleged fact patterns." R.R. 385a, Stipulation of Counsel, 9/30/2010. Since that time, she made only one request for interrogatories, which was directed at Brown and John Brown, not the HKIT. Boghossian does not explain to this Court the efforts she undertook to procure information from the HKIT.[8]

---

[7] **See** Boghossian's Amended Brief at 20.

[8] Consequently, and contrary to Boghossian's argument, the proper date to commence discovery in the matter was not February 1, 2013, when the court denied the HKIT's motion for judgment on the pleadings.

- 11 -

Third, her reliance on **Anthony Biddle Contractors, Inc. v. Preet Allied Am. St., LP**, 28 A.3d 916, 919 (Pa. Super. 2011), is misplaced, as that case is distinguishable from the present matter. In that case, the plaintiff filed a motion for extraordinary relief because the defendant had failed to comply with its discovery obligations. The trial court denied the motion as untimely. In reversing the trial court's decision, a panel of this Court found the court's ruling constituted "an abuse of the trial court's discretion because [the plaintiff] substantially complied" with the case management order. **Anthony Biddle Contractors, Inc.**, 28 A.3d at 924. Moreover, it viewed "the trial court's denial of [the plaintiff]'s motion for extraordinary relief as the imposition of a discovery sanction against [the plaintiff, which was] … unjustifiable in light of the minor nature of [the plaintiffs]'s violation." **Id.** at 925. Here, however, Boghossian did not file a motion for extraordinary relief or seek any court order regarding the HKIT's alleged failure to comply with her discovery requests. Accordingly, we decline to conclude the orphans' court abused its discretion in granting the HKIT's motion for summary judgment in light of Boghossian's claim that additional discovery was necessary to establish genuine issues of material fact. Therefore, her second argument fails.

In Boghossian's final argument, she claims the orphans' court erred in granting the HKIT's motion for summary judgment based on the following: (1) the court failed to consider factual allegations that unequivocally

demonstrated a confidential relationship between Brown and Kilijian;[9] (2) the court erroneously concluded that certain key facts were "undisputed,"[10] found other undisputed facts based solely upon the improper consideration of the deposition of Michael Striar, who was never cross-examined by Boghossian's counsel, and specifically failed to consider all inferences in favor of Boghossian as the non-moving party; and (3) the court ignored key facts that demonstrated the highly weakened intellect of Kilijian in 2006 and the obvious undue influence imparted upon her by the Browns.[11] Boghossian's Amended Brief at 39.

_____

[9] Specifically, Boghossian claims the court ignored evidence that Brown was named Kilijian's power of attorney on April 12, 2006, April 19, 2006, May 8, 2006, May 10, 2006, and December 28, 2007. *See* Boghossian's Amended Brief at 40, R.R. at 21a, 24a, 31a, 58a. However, a review of Boghossian's response to the HKIT's Motion for Summary Judgment reveals that she did not raise this argument before the orphans' court or present this evidence for review. *See* Plaintiff, Lynne Boghossian's Memorandum of Law in Support of Her Response to Defendant, the Hilda Kilijian Irrevocable Trust's Motion for Summary Judgment, 7/17/2013, at 13-17. Accordingly, to the extent she challenges evidence of Kilijian naming Brown power of attorney during this time, the issue is waived. *See* Pa.R.A.P. 302.

[10] She states that two letters, dated May 8, 2006 and May 23, 2006, were not authored by Kilijian because she does not have a typewriter or computer. *See* Boghossian's Amended Brief at 42-43. Moreover, with respect to the May 23rd letter, Boghossian claims this note "was authored by someone with legal knowledge of sophisticated financial documents (*i.e.*, John Brown, Esquire) and not an 86 [year old] unsophisticated woman." *Id.* at 44.

[11] Boghossian claims the court ignored the attorney-client relationship between John Brown and Kilijian, and that "almost every single asset of Ms. Kilijian was knowingly and voluntarily placed in joint names with Lynne

*(Footnote Continued Next Page)*

- 13 -

We begin with our well-settled standard of review:

"[O]ur standard of review of an order granting summary judgment requires us to determine whether the trial court abused its discretion or committed an error of law[,] and our scope of review is plenary." **Petrina v. Allied Glove Corp.**, 46 A.3d 795, 797-798 (Pa. Super. 2012) (citations omitted). "We view the record in the light most favorable to the nonmoving party, and all doubts as to the existence of a genuine issue of material fact must be resolved against the moving party." **Barnes v. Keller**, 62 A.3d 382, 385 (Pa. Super. 2012), *citing* **Erie Ins. Exch. v. Larrimore**, 987 A.2d 732, 736 (Pa. Super. 2009) (citation omitted). "Only where there is no genuine issue as to any material fact and it is clear that the moving party is entitled to a judgment as a matter of law will summary judgment be entered." **Id**. The rule governing summary judgment has been codified at Pennsylvania Rule of Civil Procedure 1035.2, which states as follows.

### Rule 1035.2. Motion

After the relevant pleadings are closed, but within such time as not to unreasonably delay trial, any party may move for summary judgment in whole or in part as a matter of law

(1) whenever there is no genuine issue of any material fact as to a necessary element of the cause of action or defense which could be established by additional discovery or expert report, or

(2) if, after the completion of discovery relevant to the motion, including the production of expert reports, an adverse party who will bear the burden of proof at trial has failed to produce evidence of facts essential to the cause of action or defense which in a jury trial would require the issues to be submitted to a jury.

*(Footnote Continued)* ────────────

Boghossian in 1996." **See** Boghossian's Amended Brief at 45-46. She states the court must focus on the "motivation" for the "sudden change" by Kilijian in 2006 to sever Boghossian as a beneficiary.

Pa.R.C.P. 1035.2.

"Where the non-moving party bears the burden of proof on an issue, he may not merely rely on his pleadings or answers in order to survive summary judgment." **Babb v. Ctr. Cmty. Hosp.**, 47 A.3d 1214, 1223 (Pa. Super. 2012) (citations omitted), *appeal denied,* 65 A.3d 412 (Pa. 2013). Further, "failure of a non-moving party to adduce sufficient evidence on an issue essential to his case and on which he bears the burden of proof establishes the entitlement of the moving party to judgment as a matter of law." **Id**.

> Thus, our responsibility as an appellate court is to determine whether the record either establishes that the material facts are undisputed or contains insufficient evidence of facts to make out a *prima facie* cause of action, such that there is no issue to be decided by the fact-finder. If there is evidence that would allow a fact-finder to render a verdict in favor of the non-moving party, then summary judgment should be denied.

**Id**. *citing* **Reeser v. NGK N. Am., Inc.**, 14 A.3d 896, 898 (Pa. Super. 2011), *quoting* **Jones v. Levin**, 940 A.2d 451, 452-454 (Pa. Super. 2007) (internal citations omitted).

**Cadena v. Latch**, 78 A.3d 636, 638-639 (Pa. Super. 2013).

As stated above, the crux of Boghossian's argument is that the Browns unduly influenced Kilijian during the creation and execution of the HKIT based upon a confidential relationship between Kilijian and the Browns.

Here, the orphans' court judge found the following:

> [Boghossian] attempts to prove undue influence indirectly, by showing that there was a confidential relationship between the Browns and Ms. Kilijian. [Boghossian] points to several interactions that she claims establish a confidential relationship between Ms. Kilijian and the Browns. First, that Ms. Brown holds power of attorney for Ms. Kilijian. Second, that Mr. Brown represented Ms. Kilijian in the sale of her house in 2004. Third, [Boghossian] alleges that the Browns "developed a [sic] extreme

- 15 -

and bizarre confidential relationship" with Ms. Kilijian, and that Ms. Kilijian "relied upn the Browns for not only legal decisions but also, decisions affecting [Ms. Kilijian's] life generally." [Boghossian]'s Memorandum, Response to Motion for Summary Judgment at 15. Lastly, in her affidavit [Boghossian] claims that "J. Brown and/or L. Brown have unduly influenced Kilijian to liquidate numerous joint bank accounts, to terminate numerous annuities for which myself, or my two (2) children, were the beneficiary(ies), and to otherwise funnel assets into the HKIT." [Boghossian]'s Affidavit at 2-3. These unsupported allegations are insufficient to establish clear and convincing evidence of a confidential relationship at the time of formation of the Trust.

Although Ms. Brown was named as agent under power of attorney for Ms. Kilijian, this power of attorney was signed in 2008. The Pennsylvania Supreme Court has held that [when] a person grants power of attorney to the person who allegedly exercised undue influence, it can be a clear indication of a confidential relationship. *Foster v. Schmitt*, 429 Pa. 102, 108, 239 A.2d 471, 474 (1968); *Estate of Clark*, 461 Pa. at 63, 334 A.2d at 633-34 (citing *Foster*). Nevertheless, the mere existence of a power of attorney does not establish a confidential relationship as a matter of law. *See Estate of Ziel*, 467 Pa. 531, 542, 359 A.2d 728, 734 (1976). In addition, the evidence of a confidential relationship must be specific to the point in time when the challenged transaction occurred. *Hera v. McCormick*, 425 Pa. Super. 432, 447, 625 A.2d 682, 690 (1993); *Leedom v. Palmer*, 274 Pa. 22, 27, 117 A. 410, 412 (1922) (a power of attorney executed ten months after the will "is not sufficient evidence to establish a preexisting confidential relation").

**The evidence of a power of attorney is relevant only if it corresponds to the same point in time as the disputed transaction. Ms. Kilijian named Ms. Brown as her agent under a durable power of attorney in June 2008, nearly two years after the HKIT was formed.** Therefore, because of the 19-month gap between the Trust's formation and the execution of power of attorney, **[Boghossian]'s argument that this power of attorney establishes a confidential relationship between Ms. Kilijian and Ms. Brown at the time the HKIT was created, is without merit.**

Similary, [Boghossian]'s assertion that Mr. Brown's legal representation of Ms. Kilijian in the sale of her New Jersey home

in 2004 does not demonstrate a confidential relationship and is also irrelevant to the time of the creation of the HKIT. Mr. Brown's legal representation appears to be limited to the sale of the home, and did not extend to representation in other financial matters. [Boghossian] has not produced any evidence to the contrary. Specifically, Mr. Brown's legal relationship with Ms. Kilijian was unrelated to her decision to form the HKIT, did not make Ms. Kilijian dependent upon Mr. Brown, and was sufficiently limited that it does not raise a concern of a confidential relationship.

Lastly, [Boghossian] contends in an unspecified manner that the Browns' relationship with Ms. Kilijian was "extreme" and "bizarre," and that the Browns made both legal and personal decisions for Ms. Kilijian. According to [Boghossian,] the Browns "unduly influenced" Ms. Kilijian to make financial decisions that would divert assets away from [Boghossian] and finance the HKIT. *See* [Boghossian]'s Affidavit at 2-3. In order to establish a genuine issue of material fact in dispute, a party must identify specific facts in the record and cannot rely on general assertions. Here, [Boghossian] does not identify specific facts in the record as required, and the facts she does specify as to the Brown's alleged influence (Ms. Brown's power of attorney in 2008 and Mr. Brown's legal representation in 2004) neither pertain to the formation of the Trust, nor do they correspond to the period when the HKIT was created. As for the accusation that the Browns are responsible for Ms. Kilijian's choice to "funnel assets into the HKIT," the facts in the record do not support such an assertion. The only specific actions that [Boghossian] identifies are not indicative of a confidential relationship and reference a period significantly later than November 2006, when the trust was signed.

[Boghossian] has presented no facts which could establish directly that Ms. Kilijian was unduly influenced by the Browns or by any other party at the time of the formation of the Trust. On the contrary, **all the evidence concerning the formation of the HKIT establishes that Ms. Kilijian acted independently and of her own accord. Ms. Kilijian instructed Michael Striar, an attorney in Florida, to prepare the Trust, and she paid for the legal work Mr. Striar performed in setting up the Trust**. *See* Striar Dep. 18:3-5, 25:7-24, 27:24-28:6. Based on Mr. Striar's assessment as well as that of Adam Karron, Ms. Kilijian's financial planner, at the time of the creation

- 17 -

of [the] HKIT, Ms. Kilijian was in full possession of her mental facilities, she understood the legal and financial implications of her actions, and she was not in a weakened intellectual state. *See* Striar Dep. 26:6-28:6, 32:6-33:14, 33:22-37:11; Karron Dep. 20:16-21:7, 24:24-26:1. **[Boghossian] has presented no evidence that the Browns were in communication with Ms. Kilijian about the Trust or guiding her in its structure or formation, nor that they were in Florida at the time the HKIT was formed, nor that Mr. Striar was acting under the Brown's instructions.**

In addition, [the HKIT] in its Motion for Summary Judgment calls attention to the proximity in time between the creation of the HKIT on November 21, 2006 and [Boghossian]'s agreement with Ms. Kilijian on December 15, 2006. **[Boghossian] signed a legal agreement with her Aunt, Ms. Kilijian, in December of 2006. It is incongruous for [Boghossian] to assert that Ms. Kilijian had capacity to sign that Agreement but was of a weakened intellect and subject to undue influence with regard to the creation of the HKIT 25 days earlier.** The fact that [Boghossian] was willing to enter into the December 2006 Agreement tends to support the other evidence that Hilda Kilijian was able to make her own decisions in November and December 2006. [Boghossian] has failed to identify any evidence to the contrary.

Because [Boghossian] has failed to point to any evidence that places at issue a material fact as to whether there was a confidential relationship between the Browns and Ms. Kilijian, or whether Hilda Kilijian was of a weakened intellect in 2006, the burden does not shift to [the HKIT] under *Estate of Clark*. [Boghossian] has also failed to present any specific evidence that could establish directly that the Browns unduly influenced Hilda Kilijian to create or fund the HKIT.

Orphans' Court Opinion, 10/10/2013, at 7-10 (emphasis added).

We conclude the orphans' court judge's analysis properly addresses Boghossian's argument and the law of undue influence. The judge emphasizes the following: (1) the operable date was November 21, 2006 when the trust was formed; (2) Killijian did not name Brown as her agent

- 18 -

under a durable power of attorney until June 2008; (3) John Brown's legal representation of Kilijian in 2004 was limited to the sale of her home and did not extend to other financial matters; (4) Kilijian employed Striar as her attorney and instructed him to draft the trust document; and (5) Boghossian does not dispute that Kilijian had the capacity to sign a legal agreement with her in December of 2006, which was only 25 days after the trust was created. Boghossian's averments, as provided in her affidavit, go to either John Brown's representation in selling Kilijian's home or subsequent acts that took place after the trust was formed in 2006. *See* Affidavit of Lynne Boghossian, 7/15/2013, at 1-5. Accordingly, we discern no abuse of discretion and/or error on the part of the orphans' court in granting summary judgment in this matter.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 12/19/2014