IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Annette Collier,                        :
                                        : No. 649 C.D. 2016
                    Appellant           : Submitted:  September 30, 2016
                                        :
              v.                        :
                                        :
City of Philadelphia, Board of          :
Revision of Taxes                       :


BEFORE:    HONORABLE MARY HANNAH LEAVITT, President Judge
           HONORABLE MICHAEL H. WOJCIK, Judge
           HONORABLE JAMES GARDNER COLINS, Senior Judge

OPINION NOT REPORTED

MEMORANDUM OPINION
BY JUDGE WOJCIK                                    FILED:  March 6, 2017

        Annette Collier (Landowner) appeals *pro se* the order of the
Philadelphia County Court of Common Pleas (trial court) affirming the order of the
City of Philadelphia's (City) Board of Revision of Taxes (BRT) that denied
Landowner's request for a *nunc pro tunc* appeal of the 2014 assessment of her
property located at 3639 Spring Garden Street in the City.  We affirm.

        On February 15, 2013, the City's Office of Property Assessment
(OPA)[1] issued a Notice of Proposed Valuation for 2014 (Notice) for Landowner's
Spring Garden Street property.  Reproduced Record (R.R.) at 20a.  The Notice was

---

[1] Under the City's Ordinances, the authority to make assessments of real property in the
City was transferred from the BRT to the OPA while the BRT retains jurisdiction to hear appeals
from those assessments.  Phila. Code §2-305; *Board of Revision of Taxes v. City of Philadelphia*,
4 A.3d 610, 624-27 (Pa. 2010).

sent to Landowner at 3800 Conshohocken Avenue in the City. *Id.*[2] Landowner also owns the Conshohocken Avenue property, a property at which she formerly resided. Supplemental Reproduced Record (S.R.R.) at 14b, 47b.

On May 13, 2014, Landowner appealed the assessment to the BRT. S.R.R. at 72b. On August 4, 2015, the BRT sent a letter to Landowner at the Spring Garden Street property stating that "[a]t the above referenced Administrative hearing, the [BRT] reviewed the evidence to support the Petition Nunc Pro Tunc filed by [Landowner]," and denied the petition for a *nunc pro tunc* appeal of her 2014 assessment.[3] *Id.* at 64b. On September 3, 2015, Landowner

---

[2] Section 10(a) of the statute known as the First Class County Assessment Law (Assessment Law), Act of June 27, 1939, P.L. 1199, *as amended*, 72 P.S. §5341.10(a), states:

(a) At least ten days prior to the first Monday in October of each year, the [OPA] shall give printed or written notice to the registered owners of all real property situated within the county, the assessment, valuation and ratio upon which has been increased or decreased, specifying the change made from the last preceding assessment, valuation and ratio, and setting forth that an appeal may be filed from such assessment on or before the first Monday of October, and stating as definitely as possible the time or times at which appeals will be heard by the [BRT]. Every such notice shall be given either by mailing or delivering the same to the address of the owner as shown upon the records of the [OPA], or by posting upon the assessed property.

However, Section 8565(c) of the statute known as the Consolidated First Class County Assessment Law (Consolidated Assessment Law), 53 Pa. C.S. §8565(c), states that "[n]otwithstanding any other provision of law, for tax years after tax year 2013, the [OPA] shall certify assessed values by March 31 of the preceding year."

[3] Section 14(a) of the Assessment Law states that "[a]ny person aggrieved by any assessment as the same shall be fixed following revision of assessments by the [OPA], may file an appeal therefrom with the [BRT]. Appeals from real estate assessments shall be filed on or before the first Monday of October." 72 P.S. §5341.14(a).

2

appealed BRT's decision to the trial court alleging, *inter alia*, that she never received the OPA's Notice of the assessment of her Spring Garden Street property or notice of the BRT's administrative hearing on her petition for a *nunc pro tunc* appeal of the assessment. *Id.* at 63b, 71b-75b.

In December 2015, the trial court conducted hearings on Landowner's petition for a *nunc pro tunc* appeal. Landowner testified and presented evidence supporting her assertion that she did not receive the OPA's Notice because she does not reside or receive mail at the Conshohocken Avenue property. She also presented evidence that some divisions of the City's Revenue Department sent tax and water bills for the Spring Garden Street property to her at the Spring Garden Street address.[4] In fact, the trial court continued the first hearing so that Landowner could present water bills that the City sent to her during the relevant time period at the Spring Garden Street address. The City presented the Notice of the assessment of the Spring Garden Street property that was sent to Landowner at the Conshohocken Avenue property.

At the conclusion of the final hearing, the trial court issued an order stating "that for the reasons set forth on the record[5] the Appeal of the BRT's

---

[4] As noted above, BRT also sent its August 2015 notice denying Landowner's request for *nunc pro tunc* relief to her Spring Garden Street address. S.R.R. at 64b.

[5] The trial court expressed its reasoning for its order, in relevant part, as follows:

> THE COURT: No, [Landowner]. For the purposes of the record, you are someone who owns many different properties within the [City].
> This isn't a conversation, this is my opinion on the record.
>
> You own a number of different properties in the [City].
> The City has presented evidence that there are a number of

**(Footnote continued on next page…)**

3

**(continued…)**

different addresses that are recorded, and notice to the City of where to send various different notices to you, there is not a consistent address at 3639 Spring Garden Street as of the time that the market assessment went out.

The notice of valuation for 2014 is in my hand and it does say that it was sent to 3800 Conshohocken Avenue, which is an investment property of [Landowner]. It's also a property that at one point in time, although not now, she [did] live at.

[Landowner] has presented testimony that her water bills for the property are sent to the property, and she has submitted information that the postmaster does not have 3800 Conshohocken Avenue as her primary address.

I don't think anyone is saying here that she lives at 3800 Conshohocken Avenue. [Landowner] has not told me where she does actually live.

She has not submitted any documents to confirm there is one single address that she was receiving mail from the City with regards to all her different properties. In fact, [counsel for] the City[] has presented documentation that she has multiple different addresses for multiple different investment properties.

[LANDOWNER]: No.

THE COURT: [Landowner] does not agree with that, but she has not submitted any documents for me to negate that. As an investment property owner, the burden is always on the property owner.

[LANDOWNER]: And I have –

THE COURT: Stop, [Landowner]. This is not a conversation.

The property owner does always have the obligation to update the City with their proper address. There are times in

**(Footnote continued on next page…)**

denial of *nunc pro tunc* relief is AFFIRMED.  The notice of OPA was sent to 3800 Conshohocken Avenue, which is property to which [Landowner] owns."  Trial Court 12/17/15 Order.  Landowner then filed a notice of appeal of the trial court's order to the Superior Court and the appeal was transferred to this Court.[6]

---

**(continued…)**

> residential homeowner-occupied situations where I do, for equity reasons, overlook that because we have people where it is their home or they used to live there and moved to Florida, retired individuals.
>
> But [Landowner] owns multiple different properties within the City.  She is a sophisticated investor and therefore has the obligation to update the City.  And for whatever reason that still has not been explained to me, I have clear proof that it was not updated to the OPA.  That is my opinion, therefore.

S.R.R. at 58b-60b.

[6] In the Pa. R.A.P. 1925(a) opinion filed in support of its order, the trial court does not address the merits of Landowner's appeal.  Rather, the trial court states that it "was unaware of the pending appeal until it discovered the appeal on a Superior Court docket search," and cites Pa. R.A.P. 906(a)(2) (requiring service of a copy of a notice of appeal on the trial court).  R.R. at 11a.  The trial court concludes:

> In the instant matter, [Landowner] never provided this Court with a copy of the Notice of Appeal.  [Landowner]'s certificate of service indicates that service was made upon this Court by first-class mail; however, there is no address provided on the certificate to support if and/or where the notice was sent.  [*See* S.R.R. at 79b.]  As such, this Court never received the notice and requests that the instant appeal be quashed.

R.R. at 11a.

However, Pa. R.A.P. 902 states, in relevant part:

**(Footnote continued on next page…)**

On appeal,[7] Landowner argues that the trial court erred in denying *nunc pro tunc* relief because OPA was negligent in sending the 2014 Notice of her assessment to the Conshohocken Avenue address because the City mails a number of other notices to her at the Spring Garden Street address, the address at which she receives her mail, such as her water bill, her business license, and her real property tax statement. Landowner asserts that the OPA's negligence constitutes fraud or a breakdown in the City's operations warranting the grant of *nunc pro tunc* relief.

---

**(continued…)**

> Failure of an appellant to take any step other than the timely filing of a notice of appeal does not affect the validity of the appeal, but it is subject to such action as the appellate court deems appropriate, which may include, but is not limited to, remand of the matter to the lower court so that the omitted procedural step may be taken.

As a result, Landowner's failure to serve the trial court with a notice of appeal does not affect the validity of her appeal, but subjects the appeal to such action as this Court deems appropriate. *Meadows v. Goodman*, 993 A.2d 912, 914 (Pa. Super. 2010). Because the trial court stated its reasons for denying *nunc pro tunc* relief on the record at hearing, and because Landowner's failure to serve the trial court with the notice of appeal does not impede our review, we will not quash the instant appeal nor remand the matter to the trial court. *Casselbury v. American Food Service*, 30 A.3d 510, 511-12 n.1 (Pa. Super. 2011).

[7] As the Supreme Court has explained:

> [O]ur standard of review in determining the propriety of a denial of an appeal *nunc pro tunc* is whether the trial court abused its discretion. An abuse of discretion has been defined by this Court as "not merely an error of judgment." This Court further noted that where "the law is overridden or misapplied, or the judgment exercised is manifestly unreasonable, or the result of partiality, prejudice, bias or ill will, as shown by the evidence or the record, discretion is abused."

*Union Electric Corporation v. Board of Property Assessment, Appeals & Review of Allegheny County*, 746 A.2d 581, 583 (Pa. 2000) (citations omitted).

6

"[I]n this Commonwealth, an appeal cannot be extended as a matter of grace or mere indulgence." *Union Electric Corporation v. Board of Property Assessment, Appeals & Review of Allegheny County*, 746 A.2d 581, 583 (Pa. 2000). Rather:

> Allowing an appeal *nunc pro tunc* is a recognized exception to the general rule prohibiting the extension of an appeal deadline. This Court has emphasized that the "principle emerges that an appeal *nunc pro tunc* is intended as a remedy to vindicate the right to an appeal where that right has been lost due to certain extraordinary circumstances." *Commonwealth v. Stock*, [679 A.2d 760, 764 (Pa. 1996)]. Generally, in civil cases, an appeal *nunc pro tunc* is granted only where there was "fraud or a breakdown in the court's operations through a default of its officers." *Bass* [*v. Commonwealth*, 401 A.2d 1133, 1135 (Pa. 1979)]; *see also Stock*, [] 679 A.2d at 763; *Hanoverian, Inc. v. Lehigh County Bd. of Assessment*, 701 A.2d 288, 289 (Pa. [Cmwlth.] 1997) ("[A] court may not extend that time period or allow an appeal *nunc pro tunc* absent a showing that extraordinary circumstances involving fraud, or its equivalent, duress, or coercion caused the delay in filing an appeal.").

*Union Electric Corporation*, 746 A.2d at 584.

As outlined above, Section 8565(c) of the Consolidated Assessment Law requires the OPA to issue notices of real estate assessment changes to registered property owners by March 31 of the year preceding the relevant tax year. 53 Pa. C.S. §8565(c). In turn, Section 10(a) of the Assessment Law states that "[e]very such notice shall be given either by mailing or delivering the same *to the address of the owner as shown upon the records of the* [*OPA*], or by posting upon the assessed property." 72 P.S. §5341.10(a) (emphasis added). As a result, in the instant case, the OPA sent the 2014 Notice to Landowner at the Conshohocken Avenue address in February 2013. R.R. at 20a. Additionally,

under Section 14(a) of the Assessment Law, any appeal challenging an assessment must be filed with the BRT on or before the first Monday of October of the year preceding the tax year for which revision is sought. 72 P.S. §5341.14(a). Here, Landowner's appeal of the OPA's Notice had to be filed with the BRT on or before October 7, 2013,[8] but she did not file her appeal until May 13, 2014. S.R.R. at 72b.

As this Court has explained, the manner by which the OPA is to determine the mailing address of a property owner for its records is set forth in Section 1 of the Recorder of Deeds Act.[9] *Horn v. Board of Property Assessment*, 641 A.2d 15, 16 (Pa. Cmwlth. 1994). "By doing so, the General Assembly has placed the burden on the property owner to provide the local taxing authority with an accurate mailing address in the certificate of residence [of the grantee recorded with a deed transferring title to real property]." *Id.* (footnote omitted).

---

[8] A court will take judicial notice of the computation of time, and upon what day of the week a certain day of the month falls. *Wilson v. Van Leer*, 17 A. 1097, 1098-99 (Pa. 1889); *Mentz v. Unemployment Compensation Review Board*, 370 A.2d 1232, 1233 (Pa. Cmwlth. 1977).

[9] Act of April 22, 1929, P.L. 620, *as amended*, 16 P.S. §9781. Section 1 states, in relevant part:

> For the purpose of obtaining with accuracy the precise residence of all owners of real estate, . . . it shall be the duty of the recorder of deeds in each county, whenever a deed . . . hereafter executed shall be presented to him for record, to refuse the same, unless the grantee or grantees therein named have attached thereto, and made part of such deed or transfer, a certificate, signed by said grantee or grantees . . . setting forth the precise residence and the complete post office address of such grantee or grantees, said certificate to be recorded with said deed; and thereupon the said recorder shall prepare and deliver, at stated intervals, to the [BRT], or other official or officials charged with the assessment of such real estate, a list of the real estate . . . with the location of the same, and the names of the grantor or grantors, and the names and residences of the grantee or grantees, with the date of recording.

Notice of assessment valuations are publicly available on the OPA's website, where any person may conduct a search of any address in the City at any hour to confirm past and current assessment valuations for that property. The OPA's assessment valuations for Landowner's Spring Garden Street property may be found at http://property.phila.gov/?p=871530300 (last visited February 10, 2017). The OPA's website lists Landowner's mailing address as the Conshohocken Avenue address and permits Landowner to correct or question any of the information listed therein through the submission of an online inquiry. *See id.* Additionally, it should be noted that the OPA's website provides assessment valuations for Landowner's Conshohocken Avenue property and lists the Conshohocken Avenue address as Landowner's mailing address. *See* http://property.phila.gov/?p=521440900 (last visited February 10, 2017).

In the absence of any credible evidence that Landowner's Conshohocken Avenue address is not "the precise residence" listed on the certificate of residence recorded with the deed transferring title to the Spring Garden Street property,[10] or that Landowner has updated "the precise residence" with the OPA, the trial court did not abuse its discretion in denying *nunc pro tunc*

---

[10] Pursuant to the "regularity" doctrine, we may presume that the requirements of Section 1 of the Recorder of Deeds Act were completed in this case. *See, e.g., Beacom v. Robison*, 43 A.2d 640, 643 (Pa. Super. 1945) ("[T]he doctrine of *omnia praesumuntur rite esse acta*, which maxim appears in various forms, but are all approximated in the language that a *prima facie* presumption of the regularity of the acts of public officers exists until the contrary appears. Such a presumption is a procedural expedient. . . . If the acts are within the scope of the officer's powers the presumption exists. The rule is stated, in part: 'It is, as a general rule, presumed that a public official properly and regularly discharges his duties, or performs acts required by law, in accordance with the law and the authority conferred on him, and that he will not do any act contrary to his official duty or omit to do anything which such duty may require.'") (citations omitted).

relief. *See, e.g., Horn*, 641 A.2d at 16 ("The Board, as required by law, sent the tax assessment increase notice to the taxable person, the [landowners], at the address certified to be their 'precise residence' [in the certificate of residence recorded with their deed].").[11]

Landowner also alleges that the evidence that she produced at the trial court hearing "clearly outweighs the City's and sufficiently substantiates that the City erroneously mailed her notices to her tenant's home," and that the trial court's failure to grant her *nunc pro tunc* relief "is a violation of her due process [rights], inconsistent with case law, and is an arbitrary ruling which does not support the weight of the evidence presented at trial." Brief of Appellant at 13. However, as stated above, the trial court could not extend the appeal period as a matter of grace or mere indulgence and could not grant a *nunc pro tunc* appeal absent credible proof of extraordinary circumstances involving fraud, or its equivalent, duress, or coercion. *Union Electric Corporation*, 746 A.2d at 583, 584 (citations omitted). As the trial court explained, "[Landowner] owns multiple different properties within the City. She is a sophisticated investor and therefore has the obligation to update the City. And for whatever reason that still has not been explained to me, I have clear proof that it was not updated to the OPA." S.R.R. at 60b.

---

[11] Landowner's reliance on *Connor v. Westmoreland County Board of Assessment Appeal*, 598 A.2d 610 (Pa. Cmwlth. 1991) in this regard is misplaced. In that case, we merely held that the executor of a deceased landowner's estate was entitled to a hearing on whether *nunc pro tunc* relief should be granted because he had alleged sufficient facts that the board of assessment appeal had negligently mailed improperly addressed notices of assessment. *Id.* at 612-13. In contrast, in this case, the trial court held a hearing and Landowner failed to present sufficient credible evidence showing that the OPA had negligently sent an improperly addressed Notice.

10

Moreover, "although [Landowner] may have produced competent evidence in support of [her] claims, the trial court, as the ultimate finder of fact, was not persuaded by that evidence. The trial court has exclusive province over matters involving the credibility of witnesses and evidentiary weight. This Court is prohibited from making contrary credibility determinations or reweighing the evidence in order to reach an opposite result." *In re Sullivan*, 37 A.3d 1250, 1256 (Pa. Cmwlth. 2012) (citations omitted). The trial court's rejection of Landowner's self-serving testimony and evidence of non-receipt of the OPA's Notice, and the resultant denial of *nunc pro tunc* relief, does not implicate Landowner's due process rights and is not an abuse of discretion or error of law. *Id.*; *see also Helsel v. Department of Transportation*, 605 A.2d 454, 455 (Pa. Cmwlth. 1992) ("Under the precepts of due process, however, which require notice and an opportunity to be heard, [the trial court] was obliged to make its determination solely on evidence of record.") (citations and footnote omitted).

Accordingly, the trial court's order is affirmed.

 

 

_____

MICHAEL H. WOJCIK, Judge

Senior Judge Colins concurs in the result only.

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Annette Collier,                    :
                                  : No. 649 C.D. 2016
            Appellant   :
                                  :
            v.               :
                                  :
City of Philadelphia, Board of    :
Revision of Taxes             :

O R D E R

AND NOW, this 6<u>th</u> day of <u>March</u>, 2017, the order of the Philadelphia County Court of Common Pleas dated December 17, 2015, at No. 150804808 is AFFIRMED.

_____
MICHAEL H. WOJCIK, Judge