J-S75003-16

2017 PA Super 241

SAMANTHA A. COFFMAN

　　　　　Appellant

　　　v.

DEREK L. KLINE

IN THE SUPERIOR COURT OF
PENNSYLVANIA

No. 1216 EDA 2016

Appeal from the Order Entered March 24, 2016
In the Court of Common Pleas of Lehigh County
Domestic Relations at No(s): DR-11-01287
PACSES Case No. 174112443

BEFORE:　BOWES, MOULTON AND MUSMANNO, JJ.

OPINION BY BOWES, J.:　　　　　　　　　　**FILED JULY 24, 2017**

　　　Samantha A. Coffman ("Mother") appeals from the March 24, 2016 order dismissing with prejudice a petition for contempt filed on her behalf by the Lehigh County Domestic Relations Section ("DRS").[1]　We reverse.

　　　The pertinent facts are as follows.　One child, K.A.C., was born of a relationship between Derek L. Kline ("Father") and Mother during April 2011. On July 6, 2011, Mother filed a complaint for support.　On January 31, 2014, the trial court issued an order directing Father to pay child support of $408.00 per month and arrearages totaling $17,029.60.　On June 11, 2014,

---

[1] An appeal from an order dismissing a petition for contempt is appealable where, as here, the respondent failed to comply with a prior final order. **Schultz v. Schultz**, 70 A.3d 826, 838-829 (Pa.Super. 2013).

DRS terminated Father's support since Mother no longer had custody of K.A.C.

On December 18, 2014, Mother filed a second complaint for child support after regaining custody of K.A.C. Thereafter, on January 30, 2015, the court issued an order directing Father to pay support in the amount of $602.04 per month, and noted arrearages tallying $13,890.32. Subsequently, DRS became aware that Father was negotiating a compromise and release settlement with his employer relating to an injury he sustained at work. On March 12, 2015, DRS issued a non-disbursement order pursuant to its authority under 23 Pa.C.S. § 4305, and served it on Sedgwick Claims Management Services ("Sedgwick"), a third-party workers' compensation claim servicer. That order precluded Sedgwick from disbursing any settlement payment owed to Father as a result of his workers' compensation claim until further directed by the court.

Father ultimately entered into a settlement agreement with his employer. A workers' compensation judge ("WCJ") approved the parties' compromise and release agreement by order dated September 10, 2015. The WCJ found that Father had a child support lien against him for arrearages in the amount of $14,983.10. It noted that Father's settlement, which amounted to $3,400.00, after $850.00 in counsel fees were deducted, fell below the statutory threshold of $5,000.00 enumerated in 23 Pa.C.S. § 4308.1(i) regarding child support liens by operation of law. Thus,

notwithstanding the non-disbursement order, Sedgwick, relying on the WCJ's order, released the entire settlement payment to Father.

On January 15, 2016, DRS filed a petition for contempt for Mother's benefit against Sedgwick alleging that its disbursement of the settlement agreement contravened its March 10, 2015 non-disbursement order. After holding a hearing on the matter, the court dismissed the petition for contempt with prejudice. Mother filed this timely appeal. The court did not direct Mother to file a Rule 1925(b) concise statement of matters complained of on appeal, but it did file a Rule 1925(a) opinion. This matter is now ready for our review.

Mother raises two issues for our consideration:

A. Whether the trial court erred in dismissing the petition for contempt[?]

B. Whether the trial court abused its discretion by misapplying 23 Pa.C.S. [§] 4308.1 despite the existence of a non-disbursement order pursuant to 23 Pa.C.S. § 4305 in light of **Campbell v. Walker**[, 982 A.2d 1013 (Pa.Super. 2009)?]

Mother's brief at 4 (unnecessary capitalization omitted).

Preliminarily, we must consider whether this matter is properly before us. In its Rule 1925(a) opinion, the trial court suggests that this appeal should be quashed due to Mother's failure to serve copies of the notice of appeal upon the court or the trial court reporter in violation of Pa.R.A.P.

906.[2]   Mother responds that she in fact served the trial court by hand-delivery, as noted in the certificate of service, but concedes that she failed to serve the court reporter.  We observe, "[w]hen an appellant fails to serve the notice of appeal on the trial court per Rule 906(a)(2), this Court has discretion to take any appropriate action, including remand to the trial court for the completion of omitted procedural steps."  **Casselbury v. American Food Service**, 30 A.3d 510, 511 n.1 (Pa.Super. 2011) (citation omitted).  Where a party's procedural missteps do not affect the validity of the appeal, remand is not required.  **Id**.  Here, the trial court issued a Rule 1925(a) opinion adopting its reasoning from the March 24, 2016 order in support of its decision.  Both parties filed briefs fully outlining their respective positions.  As such, Mother's error has not hindered appellate review, and quashal is not necessary.  Hence, we will reach the merits of this appeal.

For ease of disposition, we review Mother's contentions in reverse order.  Mother's second issue challenges the trial court's application of 23 Pa.C.S. § 4308.1 to Father's workers' compensation settlement agreement.  As with all questions of the interpretation and application of a statute, our standard of review is *de novo*, and our scope of review is plenary.  **In re**

_____

[2] The Pennsylvania Rules of Appellate Procedure require, among other things, that an appellant serve the "judge of the court below" and "the official court reporter of the trial court," with a copy of the filing of the notice of appeal when the same is filed with this Court.  Pa.R.A.P. 906.

- 4 -

***Adoption of R.A.B.***, 153 A.3d 332, 334 (Pa.Super. 2016). Moreover, this Court is

> constrained by the rules of statutory interpretation, particularly as found in the Statutory Construction Act. 1 Pa.C.S. §§ 1501-1991. The goal in interpretation any statute is to ascertain and effectuate the intention of the General Assembly. Our Supreme Court has stated that the plain language of a statute is in general the best indication of the legislative intent that gave rise to the statute. When the language is clear, explicit, and free from any ambiguity, we discern intent from the language alone, and not from the arguments based on legislative history or "spirit" of the statute. We must construe words and phrases in the statue according to their common and approved usage. We also must construe a statute in such a way as to give effect to all its provisions, if possible, thereby avoiding the need to label any provision as mere surplusage.

***Id***. (citation omitted).

In finding Sedgwick was not in contempt of court, the trial court reasoned that Father's settlement payment of $3,400.00 was subject to § 4308.1 of the Domestic Relations Act ("Act") since § 4305, which DRS relied upon in issuing the non-disbursement order, "does not set forth the mechanism of how such powers are to be implemented." Trial Court Order, 3/24/16, at 2. The court determined that Father's award fell below the statutory threshold contained within § 4308.1, discussed further *infra*, and therefore, "there was no recoverable child support lien by operation of law." ***Id***. at 3. As a result, the court found Sedgwick had followed the procedure for distribution of a settlement as outlined in § 4308.1 and, thus, Sedgwick was not in contempt of court.

Mother assails the court's ruling, maintaining that the non-disbursement order filed and served on Sedgwick was a valid exercise of DRS's authority pursuant to § 4305 of the Act. Further, she contends that this Court previously analyzed the interplay between §§ 4305 and 4308.1 in *Campbell v. Walker*, 982 A.2d 1013 (Pa.Super. 2009), and thus, that case controls this matter. Before discussing the *Campbell* decision, we set forth the relevant text of the provisions at issue.

The powers and duties of DRS are enumerated in § 4305. That section reads, in pertinent part:

> (b) Additional powers.--Subject to the supervision and direction of the court but without the need for prior judicial order, the domestic relations section shall have the power to expedite the establishment and enforcement of support to:
>
> . . .
>
> > (10) Issue orders in cases where there is a support arrearage to secure assets to satisfy current support obligation and the arrearage by:
> >
> > > (i) Intercepting or seizing periodic or lump sum payments from a government agency, including unemployment compensation, workers' compensation and other benefits.
> > >
> > > (ii) Intercepting or seizing judgments or settlements.

23 Pa.C.S. § 4305(b)(10)(i) and (ii).

In contrast, § 4308.1 governs the collection of overdue support from monetary awards, and reads, *inter alia*:

> (a)   General rule.--Overdue support shall be a lien by operation of law against the net proceeds of any monetary award, as defined in subsection (i), owed to an obligor, and

- 6 -

distribution of any such award shall be stayed in an amount equal to the child support lien provided for under this section pending payment of the lien. Except as provided in subsection (c) or (f), nothing in this section shall provide a basis for a paying agent or an insurer to delay payment of a settlement, verdict or judgment.

. . . .

(f) Workers' compensation awards.--With respect to any monetary award arising under the [Workers' Compensation Act or the Pennsylvania Occupational Disease Act], no order providing for a payment shall be entered by the [WCJ] unless the prevailing party or beneficiary, who is a claimant under either or both of the acts, shall provide the judge with a statement made subject to 18 Pa.C.S. § 4904 that includes the full name, mailing address, date of birth, and Social Security number for the prevailing party or beneficiary who is a claimant under either or both acts. The prevailing party or beneficiary, who is a claimant under either or both of the acts shall also provide the judge with either written documentation of arrears from the Pennsylvania child support enforcement system website or, if no arrears exist, written documentation from the website indicating no arrears. The judge shall order payment of the lien for overdue support to the department's state disbursement unit from the net proceeds due the prevailing party or beneficiary who is a claimant under either or both acts.

. . . .

(i) Definitions.--As used in this section, the following words and phrases shall have the meanings given to them in this subsection:

"Net proceeds." Moneys in excess of $5,000 payable to a prevailing party or beneficiary, or in the case of an award under [the Workers' Compensation Act or Pennsylvania Occupational Disease Act], the claimant after payment of attorney fees, witness fees, court costs, reasonable litigation expenses, documented unpaid expenses incurred for medical treatment causally related to the claim, any workers' compensation or occupational disease indemnity

> or medical payment and payments to the medical payment and payments to the medical assistance program under [the Public Welfare Code].

23 Pa.C.S. § 4308.1. We previously determined the "net proceeds" attributable to the automatic lien provision contained within § 4308.1 are limited to those amounts in excess of $5,000.00. *See Faust v. Walker*, 945 A.2d 212, 215 (Pa.Super. 2008) (stating "The statute clearly defines "net proceeds" as moneys in excess of $5,000.00 payable to a prevailing party, beneficiary or claimant after payment of attorney fees, costs, etc."). Thus, the net proceeds of a workers' compensation settlement are reduced to the remainder of the award after an initial $5,000.00 is deducted. It is undisputed that Father's settlement agreement fell below the threshold to constitute "net proceeds" under § 4308.1.

At the outset, we find that *Campbell*, *supra*, is dispositive. In *Campbell*, the father, Earl Walker, Jr., negotiated a settlement netting $3,083.83 arising from a personal injury lawsuit. The Department of Public Welfare ("DPW") was apprised of this settlement, and in light of a pre-existing welfare claim it filed against Walker, ordered the Philadelphia District Attorney, acting on behalf of DPW, to seek a non-disbursement order. The court of common pleas granted the district attorney's non-disbursement order, and directed Walker's attorney to hold the settlement proceeds in an escrow account.

Walker subsequently sought to vacate the non-disbursement order. Following a hearing and an agreement by Walker to satisfy certain child support arrearages, the court, relying on § 4308.1, ordered the disbursement of the remaining funds to Walker, and denied any distribution to DPW, despite the unresolved non-disbursement order. In rendering this decision, the trial court determined that the relevant sections of the Act were in conflict, and since § 4308.1 was a specific provision, it governed in place of the general language contained within § 4305.

On appeal, DPW argued, *inter alia*, that the trial court erred in finding that the statutory lien provision contained in § 4308.1 was the only method of enforcing a support order against a monetary award. We reviewed the above mentioned language contained within §§ 4305 and 4308.1, and determined that the trial court erred in finding that the two provisions were in conflict. We noted

> [t]he threshold distinction between the two sections is that section 4308.1, by its explicit terms, imposes a lien "by operation of law" upon the recovery of a monetary judgment in excess of $5,000. Consequently, the lien attaches immediately upon the recovery by the obligor, with no action by the obligee, here DPW, required. Thus, section 4308.1 is a separate device intended to insure that the obligor notifies the "Pennsylvania child support enforcement system" of any new or unexpected assets. By contrast, the statutory powers granted pursuant to section 4305 to a designated "domestic relations" agent, . . . permit that designee to affirmatively act to collect arrears **in any amount**, without regard to a statutory minimum sum, from defaulting obligors, by, *inter alia*, issuing orders "[i]ntercepting or seizing judgments or settlements."

*Campbell*, *supra* at 1016-1017 (emphasis in original). Hence, we determined that §§ 4305 and 4308.1 were not "irreconcilable, but complementary measures designed to achieve the overarching public policy goal of insuring the collection of support arrears." *Id*. at 1017.

Sedgwick concedes that DRS has authority under § 4305 to enforce and collect child support arrearages by seizing lump sum settlements arising under a workers' compensation claim. Nevertheless, it contends that the powers detailed in that section are limited by § 4308.1, which specifically controls workers' compensation matters. Sedgwick argues that § 4308.1 directed the WCJ to order disbursement of the settlement funds. Therefore, Sedgwick concludes that it was not in a position to disburse the funds in a manner inconsistent with the WCJ's explicit order.

Additionally, Sedgwick asserts that *Campbell*, *supra* is inapposite to this matter since this case involves a workers' compensation matter, as opposed to a personal injury claim. It insists that the WCJ was merely following established practice in rendering her decision, and argues implicitly, that personal injury settlements are not subject to similar established procedures. Further, unlike this case, the government entity in *Campbell* sought recovery from the defaulting obligor as opposed to a third-party entity. Sedgwick argues that DRS should pursue relief from Father, rather than a third-party claim administrator.

We find Sedgwick's argument merely raises distinctions without a difference. Moreover, our holding in **Campbell** expressly rejected the claim that the specific language contained in § 4308.1 supersedes the general language within § 4305. Instantly, DRS issued and served Sedgwick with a non-disbursement order pursuant to § 4305 to ensure that any settlement received by Father was applied to his outstanding child support arrearages. **Campbell** illustrates that this measure was well within DRS's authority. The automatic statutory lien imposed by § 4308.1 only applies to the net proceeds of Father's awards, *i.e.*, any amount received in excess of $5,000.00. Father did not receive such an excess, and thus, there was no lien for the WCJ to automatically disburse to DRS pursuant to § 4308.1(f). Thus, § 4308.1 did not apply.

Sedgwick's argument that the WCJ is ultimately responsible for disbursing the settlement funds, notwithstanding any order to the contrary, leads to an absurd result. On the one hand, Sedgwick acknowledges DRS's authority to seize a workers' compensation settlement under § 4305. On the other hand, Sedgwick would permit DRS to exercise that authority only against the net proceeds of such an award under § 4308.1, while leaving the authority to dictate the allocation of the remaining funds to the discretion of the WCJ. However, the terms of § 4308.1 do not afford the WCJ such discretion. In addition, accepting such an argument would lead us to the conclusion that DRS's statutory power to seize the proceeds of a workers'

compensation settlement would only apply when the statute has provided, by operation of law, that the WCJ must disburse those proceeds to DRS. We cannot abide such a deduction.

Rather, we find that the analysis presented in *Campbell* displays sound reasoning and is directly on point with this matter. The language employed in § 4305 permits DRS, under court supervision but without the need for a prior court order, to issue a non-disbursement order to intercept a lump sum workers' compensation payment or settlement. 23 Pa.C.S. § 4305(b)(10)(i) and (ii). On the contrary, § 4308.1 mandates **only** that a WCJ must distribute the **net proceeds** of a workers' compensation award to a disbursement agency. It is those net proceeds alone which are subject to an automatic lien by operation of law. Thus, the language contained within these provisions clearly and unambiguously establishes complementary means to achieve the Act's goal of ensuring the collection of support arrears. *Campbell*, *supra*. Under § 4305, DRS may affirmatively act, as it did here, to ensure the collection of any amount of a settlement. Concomitantly, § 4308.1 only obligates a WCJ to dispense any amount in excess of $5,000.00 to the relevant disbursement agency. Hence, the trial court erred in determining that the "procedure for distribution of the settlement proceeds outlined in [§ 4308.1]," Trial Court Order, 3/24/16, at 4, applied to Father's $3,400.00 settlement, and that, as a result, neither the WCJ nor Sedgwick were required to comply with DRS's otherwise valid non-disbursement order.

Having determined that the court erred in finding that § 4308.1 negated the operation of DRS's non-disbursement order, we turn now to Mother's first claimed error.

We review an order denying a petition for civil contempt for an abuse of discretion. **Orfield v. Weindel**, 52 A.3d 275, 278 (Pa.Super. 2012). We will find an abuse of discretion where the court "misapplies the law or exercises its discretion in a manner lacking reason." **Id**. (citation omitted). To be found in civil contempt, "the complaining party must show, by a preponderance of the evidence, that a party violated a court order." **Id**. at 279. Thus, the party must prove:

> (1) that the contemnor had notice of the specific order or decree which he is alleged to have disobeyed; (2) that the act constituting the contemnor's violation was volitional; and (3) that the contemnor acted with wrongful intent.

**Sutch v. Roxborough Memorial Hosp.**, 142 A.3d 38, 67 (Pa.Super. 2016).

Sedgwick does not dispute that it received the non-disbursement order nor that it knowingly disobeyed the order. Rather, it defends its actions by claiming that it acted pursuant to the WCJ's order, that the WCJ was fully apprised of Father's support obligations, and thus, that it was immune from liability under § 4308.1(e). The crux of Mother's retort, in this regard, is that § 4308.1(e) does not apply to actions taken pursuant to § 4305.

The immunity provision contained within 23 Pa.C.S. § 4308.1 reads,

> (e) Immunity.--An attorney, insurer or other paying agent that makes distribution in accordance with a statement and the written documentation required under subsection (b) or the report of an approved private judgment search company under subsection (d), or an insurer which furnishes information and transmits funds under the child support enforcement lien program operated through a central reporting agency approved by the department, shall be immune from any civil, criminal or administrative penalties for making an erroneous distribution. Nothing in this section shall give rise to a claim or cause of action against an attorney or an insurer by any person who asserts he is the intended obligee of the outstanding lien for child support.

23 Pa.C.S. § 4308.1(e).

We find that the immunity provision found in § 4308.1 does not apply to actions taken under § 4305. The terms of the immunity provision set forth that no claim for a mistaken payment can be brought by an "intended obligee of the **outstanding lien** for child support," against a paying agent, such as Sedgwick, so long as the notice requirements contained within § 4308.1(b) have been met.  23 Pa.C.S. § 4308.1(e) (emphasis added).  It is undisputed that the WCJ was apprised of Father's support obligations pursuant to § 4308.1(b).  However, the plain language of the provision indicates only that the immunity provision operates where a party incorrectly disburses the outstanding lien, *i.e.*, the automatic lien place upon the net proceeds pursuant to § 4308.1.  Indeed, the immunity provision explicitly states that, "nothing **in this section** shall give rise to a claim or cause of action[.]" 23 Pa.C.S. § 4308.1(e) (emphasis added).  Thus, the immunity provision does not protect a third-party payor against erroneous

- 14 -

distributions where the automatic lien does not apply, such as those arising under § 4305.

Having determined that Sedgwick is not protected by the immunity provision contained in § 4308.1, we consider whether Mother met her burden of proof to establish civil contempt. Mother contends that Sedgwick was aware of the non-disbursement order in question, and that it willfully distributed the settlements funds in contravention of the clear terms of the order. She asserts that Sedgwick regularly received non-disbursement orders and that it was familiar with the intent and purpose of such notices and the law controlling their operation. She insinuates that, based on Sedgwick's knowledge and familiarity with non-disbursements orders, its conscious disregard of the document herein amounts to a knowing and wrongful violation. Finally, Mother suggests that if Sedgwick had informed the WJC of the non-disbursement order, the law would have required the judge to direct the proceeds of the settlement to DRS.

As noted above, Sedgwick concedes it received, and violated, the non-disbursement order. Nevertheless, Sedgwick refutes Mother's allegations, arguing that it has been a long-standing practice for WCJs to distribute the proceeds of a settlement agreement directly to the claimant whenever it found that § 4308.1 did not apply. Sedgwick maintains that it disbursed the funds to Father pursuant to a valid WCJ order, and implicitly that it, therefore, did not act with wrongful intent. It argues that it was required to

comply with the WCJ's order, and that such orders are the outcome of a "routine, pervasive application of this procedure in worker's [sic] compensation matters."  Appellee's brief at 18.

Upon review of the certified record, we observe that Sedgwick's concerns in this matter are far more pragmatic than its legal argument discloses.  The record reveals that it has been a long-standing practice for third-party claim administrators, such as Sedgwick, to ignore non-disbursement orders in cases involving small settlements.  For example, during the hearing on this matter Sedgwick argued:

> What happened here, as a result of the filing of a workers' compensation case with [Father], which is embroiled with a Domestic Relations battle, those orders are generated almost automatically.  [Sedgwick's in-house attorney], Mr. Santoro will tell you he sees it on a monthly basis multiple times, and all the attorneys that do comp work in our firm get them all the time.

N.T. Contempt Hearing, 2/18/16, at 8-9.  In addition, in arguing that § 4308.1 has long controlled the distribution of workers' compensation settlements, regardless of the amount in question, Sedgwick explained, "After [application of § 4308.1], they [Sedgwick] don't have to get embroiled in domestic issues for small sums.  It doesn't mean [DRS isn't] entitled to get it from [Father].  It just means we don't have to mess with that, and it happens all the time routinely."  *Id*. at 12.

Sedgwick's complaints stem from its trepidation that complying with a non-disbursement order runs the risk that it will become embroiled in a domestic dispute.  In addition, we discern that there is concern among third-

party claim administrators that acknowledging a non-disbursement order will chill negotiations with an injured worker, who may be less likely to enter into a compromise and release agreement if they become aware that a portion, or the entirety, of the settlement will be applied to outstanding support obligations. Although such practical concerns are understandable, they are not a defense to the clear mandate contained within the Domestic Relations Act. Sedgwick's duty, in this regard, was simply to pass the non-disbursement order to the WCJ, so that the WCJ could direct the dissemination of the funds accordingly.

Sedgwick readily admitted that it violated an unambiguous court order to avoid complications regarding Father's workers' compensation settlement. Moreover, had Sedgwick presented the non-disbursement order to the WJC in the first place, it would not have found itself in a position where it would have to violate one valid court order or another. As such, we find that Mother has shown by a preponderance of the evidence that Sedgwick willfully violated a court order with the wrongful intent of avoiding practical obstacles which do not otherwise justify its malfeasance. Hence, the trial court abused its discretion in dismissing Mother's petition for contempt with prejudice.

Order reversed. Case remanded. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 7/24/2017