J-A02015-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| M.G. | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| S.J. | : | |
| | : | |
| Appellant | : | No. 1122 WDA 2017 |

Appeal from the Orders Entered on July 20, 2017
In the Court of Common Pleas of Allegheny County Civil Division at
No(s): FD-07-009307-004

BEFORE: BOWES, J., OLSON, J., and KUNSELMAN, J.

MEMORANDUM BY BOWES, J.:           **FILED MARCH 16, 2018**

S.J. ("Father") appeals *pro se* from the July 20, 2017 orders denying his petition for contempt against M.G. ("Mother") without a hearing and awarding Mother $600 in counsel fees on the basis that the petition was obdurate and vexatious.[1] We affirm.

This appeal stems from the parties' child custody dispute. Mother and Father married in 1994, separated in 2007, and divorced in 2010. They have two children, an adult son who is not the subject of this appeal, and a minor daughter, Su.J., born in October 2000. This matter has a lengthy and tortuous procedural history, due primarily to Father's myriad petitions for contempt and for the modification of the parties' custody order, and the ensuing appeals to this Court.

---

[1] As an order denying a petition for contempt is final and appealable when entered in relation to a prior final order, the present appeal is properly before this Court. **Schultz v. Schultz**, 70 A.3d 826, 828 (Pa.Super. 2013).

The trial court's January 21, 2016 custody order governed the parties' custody arrangement during the period relevant to this appeal. That order awarded Mother sole legal custody and primary physical custody of Su.J. Father was granted periods of partial physical custody; however, as we discuss *infra*, Father's right to physical custody diminished during October 2016 when the court made it subject to Su.J.'s discretion. Similarly, Mother's legal custody was subject to a provision in the January 2016 order that required her to consult with Father regarding school-related and extracurricular activities. Nevertheless, Mother had ultimate authority to enroll Su.J. in an activity if Father refused to agree.

During July 2016, Father filed a petition for contempt against Mother. Father alleged that Mother violated the January 21, 2016 order by traveling outside of Allegheny County with Su.J. for longer than twenty-four hours without advising him, using Su.J. as an intermediary, and misleading the court regarding Su.J.'s desire to attend summer programs at two universities. Mother filed a response, in which she requested that the trial court deny Father's petition and award her with counsel fees. The court denied Father's petition on July 13, 2016, and granted Mother's request for $1,000 in fees. Father timely appealed on August 11, 2016.[2]

On August 18, 2016, while Father's appeal remained pending, the trial court received an *ex parte* letter from Su.J. The record reveals that the court's

_____

[2] We affirmed the July 13, 2016 contempt order on January 30, 2017. **See M.G. v. S.J.**, 160 A.3d 271 (Pa.Super. 2017) (unpublished memorandum).

administrative assistant intercepted the letter, and returned it to Su.J., explaining that the court could not read it without first sharing it with Mother and Father. Su.J. then had the letter signed by both parties, and sent it back to the court. In her letter, Su.J. indicated that the current child custody situation had become very difficult and stressful for her, and requested a meeting with the court.

On September 1, 2016, the court entered an order indicating that it had reviewed Su.J.'s letter and permitted the parties to praecipe for a custody conciliation, including an *in camera* interview with Su.J. Father filed a praecipe on September 19, 2016, and the court scheduled a conciliation and an *in camera* interview for October 20, 2016. On October 21, 2016, the court entered an interim order awarding primary physical custody to Mother and granting partial physical custody to Father at Su.J.'s discretion.

On February 13, 2017, Father filed a praecipe for further custody proceedings. The trial court scheduled a hearing, which began on June 29, 2017. The court then scheduled an additional *in camera* interview with Su.J. However, on July 20, 2017, prior to the interview, Father filed yet another petition alleging that Mother was in contempt of the final custody order entered on January 21, 2016. That petition, which is the genesis of the instant appeal, reiterated several of Father's previous allegations of contempt and implicated events that occurred prior to July 2016. Noting the staleness of Father's claims, Mother countered that Father was attempting to annoy and

harass her, and she requested counsel fees. That same day, the court entered the above-captioned orders that denied Father's petition for contempt and awarded Mother $600 in fees.[3] In its Rule 1925(a) opinion, the trial court subsequently explained that it denied Father's petition for contempt because the allegations therein "pertained to previous custody orders, hearings, and appeals, all of which have been dealt with before." Trial Court Opinion, 8/31/2017, at 3.

On August 1, 2017, Father timely filed a notice of appeal from both orders, along with a concise statement of errors complained of on appeal. Father levels an interconnected web of assertions within the six prolix claims he presents for our review. *See* Father's brief at 3-4. We address, *infra*, Father's claim that the trial court abused its discretion in awarding attorneys' fees based upon his obdurate and vexatious behavior. However, as the trial court observed in denying the underlying petition for contempt, most of the assertions against Mother were litigated in Father's prior appeals to this Court.

---

[3] In one order, the trial court simply crossed out Father's proposed order for relief and inscribed the handwritten notation "denied." In the second order, the trial court specifically articulated its conclusions that "1. [Father's] Petition for Contempt is denied[;] 2. [Father's] Petition constitutes obdurate and vexatious behavior in raising stale claims and lacking necessary specificity[; and] 3. Counsel for [Mother] is awarded the sum of $600.00 in counsel fees, to be paid by [Father] within fifteen (15) days." Trial Court Order, 7/20/17. Father attached both orders to his notice of appeal.

*See M.G. v. S.J.*, 160 A.3d 271 (Pa.Super. 2017) (unpublished memorandum). We do not address those duplicate issues herein.[4]

The allegations of contempt that are actually before us in the present appeal are that (1) Mother traveled with Su.J. outside of Allegheny County for longer than twenty-four hours after the July 2016 contempt proceedings without advising Father; and (2) Mother enrolled Su.J. in summer programs after the July 2016 contempt proceedings without first consulting Father using Our Family Wizard. For the following reasons, we affirm the trial court's conclusion that neither of these claims entitled Father to a contempt hearing.

We review civil contempt orders pursuant to an abuse of discretion standard of review. *K.M.G. v. H.M.W.*, 171 A.3d 839, 844 (Pa.Super. 2017). A trial court abuses its discretion "if, in resolving the issue for decision, it misapplies the law or exercises its discretion in a manner lacking reason.

---

[4] Father also raises claims pertaining to the trial court's conduct of the ongoing child custody proceedings. Specifically, Father argues that the court demonstrated bias and prejudice by "accepting its tip staff's directive via e-mail that resulted in the child not appearing as a witness at the Custody hearing of June 29, 2017," and by quashing his subpoena of a police officer. Father's brief at 14-15. These claims are not properly before this Court. Father did not include these claims in his petition for contempt, and the court did not address them in its July 20, 2017 contempt orders. Father appealed only from the July 20, 2017 orders, and did not appeal from any court orders pertaining to the ongoing custody hearing. Even if he had, it is clear that any such appeal would be interlocutory. *See G.B. v. M.M.B.*, 670 A.2d 714, 720 (Pa.Super. 1996) ("[A] custody order will be considered final and appealable only if it is both: 1) entered after the court has completed its hearings on the merits; and 2) intended by the court to constitute a complete resolution of the custody claims pending between the parties.").

Similarly, the trial court abuses its discretion if it does not follow legal procedure." *Id*. at 844-45 (quoting **Bold v. Bold**, 939 A.2d 892, 895 (Pa.Super. 2007)).

Our child custody statute provides that "[a] party who willfully fails to comply with any custody order may, as prescribed by general rule, be adjudged in contempt." 23 Pa.C.S. § 5323(g)(1). In order to support a finding of civil contempt, the petitioning party must prove by a preponderance of the evidence "(1) that the contemnor had notice of the specific order or decree which he is alleged to have disobeyed; (2) that the act constituting the contemnor's violation was volitional; and (3) that the contemnor acted with wrongful intent." **Coffman v. Kline**, 167 A.3d 772, 780 (Pa.Super. 2017). However, a court cannot revisit contempt claims that were litigated, or could have been litigated, during a prior contempt proceeding. **See Glynn v. Glynn**, 789 A.2d 242, 249 (Pa.Super. 2001) (*en banc*) (holding that the doctrine of *res judicata* barred the appellant's challenge to the court's contempt finding, because the appellant could have raised this challenge during a prior contempt proceeding).

We first address Father's claim that Mother took Su.J. outside of Allegheny County for longer than twenty-four hours without advising him. In his petition for contempt, Father alleged that Mother violated paragraph thirteen of the January 21, 2016 custody order, which provides as follows.

> 13. If either parent is to take vacation in a location outside Allegheny County, they will notify the other party as to the

- 6 -

location of that vacation at the time the vacation is scheduled. [Su.J.] is permitted to travel within the continental United States with either parent during their custody time. Each parent shall advise the other of travel outside Allegheny County for periods exceeding 24 hours. International travel with [Su.J.] shall not require an Order of Court as long as the parties agree to the times and receive advance notice and an itinerary of the travel. In the event that the parties cannot agree to a proposed trip, the party scheduling the trip may bring the matter before the Court. Neither party will schedule a vacation that interferes with [Su.J.'s] school or with the Holiday schedule set forth above.

Order, 1/21/16.

In support of this allegation, Father attached to his petition a copy of Mother's answers to his third combined interrogatories and request for production of documents. Therein, Mother acknowledged that she traveled outside of Allegheny County with Su.J. for longer than twenty-four hours on several occasions after the July 2016 contempt proceedings. This included a five-day trip in August 2016 to Deep Creek, Maryland, and several three-day trips to attend weddings, visit a university, and visit family. Mother acknowledged with respect to all but one of these trips that she did not advise Father using Our Family Wizard.

As noted above, Father has raised the issue of Mother's travel with Su.J. in the past. In its opinion addressing Father's appeal from the July 2016 contempt proceedings, the trial court rejected a similar claim as a misinterpretation of its January 21, 2016 order. The court explained as follows.

Father alleged that Mother violated Paragraph 13 of the January 21, 2016 custody order outlining travel outside of

- 7 -

> Allegheny County. The allegation is quite ridiculous. The Court has been aware for some time that Mother attends a family reunion in Deep Creek, MD around the Fourth of July holiday. Father had even once brought this issue to the Superior Court, arguing that Mother misled the Court in describing her family get-together as a "family [re]union." He argued that the gathering was not a family reunion because the child had testified in camera that the family does not, in fact, have t-shirts made. This Court determined that Paragraph 13 was clearly meant to apply to general vacations or the special business trips on which Father takes the child, and not the family reunion trip which has been the source of Father's litigation since 2011.

Trial Court Opinion, 9/12/16, at 3-4 (citations omitted).

Thus, while it is true that paragraph thirteen directs that the parties should advise each other if they travel outside of Allegheny County with Su.J. for longer than twenty-four hours, the trial court has clarified that this provision applies to vacations, and not to Mother's family reunion trips, or to the sort of three-day trips described in her answers to Father's interrogatories. Moreover, we observe that the court expressly approved Mother's August 2016 trip to Deep Creek in an order entered June 9, 2016. Because Father did not allege or establish in his petition that Mother took Su.J. on a vacation after the July 2016 contempt proceedings without advising him, he was not entitled to a hearing.

Next, we address Father's claim that Mother enrolled Su.J. in summer programs without first consulting him using Our Family Wizard. Father's claim relates to paragraph two of the January 21, 2016 custody order, which provides as follows, in relevant part.

2. Extracurricular Activities

a. The parents will discuss (utilizing "Our Family Wizard") and seek to agree prior to enrolling [Su.J.] in any school related or extracurricular activities, especially when those activities will occur during both parents' custody time and will require their facilitation and/or participation.

b. If the parents cannot agree, Mother will have the sole authority to decide whether to enroll [Su.J.] in the activity.

c. Both parties are to keep a record on the "Our Family Wizard" calendar of the schedule of any and all activities in which [Su.J.] is enrolled.

Order, 1/21/16.

In her response to Father's petition for contempt, Mother acknowledged that she enrolled Su.J. in summer programs at two universities in 2017. Mother also acknowledged that she had not used Our Family Wizard since November 2016. However, Mother denied that this was a material violation of the January 21, 2016 custody order, given her sole legal custody of Su.J., and the fact that the October 21, 2016 order subjected Father's periods of partial physical custody to Su.J.'s discretion. Insofar as Su.J. was not required to contact Father if she did not desire, we agree with Mother's position that the alleged transgressions were immaterial.

Father is correct that Mother's decision to enroll Su.J. in summer programs without consulting him is a technical violation of the January 21, 2016 order. However, it is clear that Mother's violation was *de minimis*. As Mother indicated, she has sole legal custody of Su.J. While the order provides that Mother should consult with Father before enrolling Su.J. in school-related and extracurricular activities, Mother retained exclusive authority to enroll

- 9 -

Su.J. in the program if she and Father were unable to reach an agreement. Thus, even if Mother had consulted Father about these programs, it would have made no difference.

Mother's violation is particularly insignificant in light of the court's October 21, 2016 custody order that made Father's periods of physical custody entirely at Su.J.'s discretion. Tellingly, the genesis of the October 2016 order was Father's overreaction to his daughter's desire to attend a similar summer program at a university during summer 2016. At her *in camera* interview with the trial court, Su.J. described how Father first pressured her not to attend that program, and when this ploy failed, Father threatened to cease all communication with her, a device that he had employed with the parties' older child. Su.J. told the court, "when I left, he said you know, if you go . . . I don't want to have anything to do with you, I'll cut you off like your brother." N.T., 10/20/16, at 36. Su.J. attended the program despite Father's protestations; however, the confrontation with Father was so distressing that the fifteen year old approached the trial court directly and requested control over Father's custodial periods. Su.J. explained to the court, "It had gotten [so] bad that I didn't want to go over any more. And when I got back [from the program], I was so fired up and I was so angry. I was like, I want the Judge to know and I wanted her to hear it from me and I want her to know how [it] was so bad and how I was so stressed[.]" *Id*. at 43. In light of Father's intimidation of Su.J. under identical circumstances one year earlier,

and the lingering effect of those aggressive tactics on Su.J.'s emotional health, Mother acted reasonably in neglecting to inform Father of their daughter's participation in similar summer programs during 2017.

In sum, Mother's decision to forego consulting Father about Su.J.'s potential enrollment in the summer programs during 2017 was justified in light of Father's reaction to her participation in a comparable program, and the fact that Su.J.'s enrollment did not affect Father's custodial rights. As it is clear that Father is not entitled to relief, we discern no abuse of discretion in the court's decision to deny the petition.

Next, we reject Father's challenge to the trial court's decision to award Mother $600 in counsel fees. This Court will not disturb a trial court's award of counsel fees absent an abuse of discretion. **A.L.-S. v. B.S.**, 117 A.3d 352, 361 (Pa.Super. 2015). Our child custody statute provides that a court "may award reasonable interim or final counsel fees, costs and expenses to a party if the court finds that the conduct of another party was obdurate, vexatious, repetitive or in bad faith." 23 Pa.C.S. § 5339. Concerning the type of conduct that would warrant the imposition of counsel fees, this Court has explained that a custody filing is "vexatious" if it is "brought without legal or factual grounds and if the action served the sole purpose of causing annoyance." **A.L.-S.**, 117 A.3d at 362.

The trial court found that Father's petition was obdurate, vexatious, repetitive, and filed in bad faith. Trial Court Opinion, 8/31/17, at 3-4. The

court stressed once again that Father's petition for contempt "related exclusively to matters previously considered and ruled upon by all levels of Pennsylvania jurists[, and that it had] no choice but to award fees." *Id*. at 4. Stated plainly, the trial court could no longer countenance Father's recalcitrance.

The certified record supports the trial court's characterization of Father's petition for contempt. Indeed, our review of the record reveals that the petition consisted entirely of claims that were either previously litigated, *de minimis*, or utterly devoid of merit. This is not the first time that Father filed a frivolous petition, and his prior actions have made it abundantly clear that simply entering an order denying his petition will not discourage him from pursuing meritless claims in the future. Accordingly, we find that it was within the trial court's discretion to conclude that the imposition of counsel fees was appropriate.

As the trial court did not abuse its discretion in denying Father's petition for contempt without a hearing or by awarding Mother $600 in counsel fees, we affirm the trial court's July 20, 2017 orders.

Orders affirmed.


Judgment Entered.

_____

- 12 -

Joseph D. Seletyn, Esq.
Prothonotary


Date: 3/16/2018