J-S25041-18

NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37

| | | |
|---|---|---|
| M.M.-R. | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| J.R.R. | : | |
| | : | |
| Appellant | : | No. 1835 WDA 2017 |

Appeal from the Order Entered November 9, 2017
In the Court of Common Pleas of Allegheny County
Family Court at No(s): FD 08-008935-016

BEFORE: GANTMAN, P.J., PANELLA, J., and OTT, J.

MEMORANDUM BY OTT, J.: FILED JUNE 4, 2018

J.R.R. ("Father") appeals pro se from the order entered November 9, 2017, in the Court of Common Pleas of Allegheny County, which granted the petition for contempt filed by M.M.-R. ("Mother") and sanctioned Father $20,000 in counsel fees. The order also denied Father's petition for modification of custody with respect to the parties' son, H.R. ("Child"), and awarded Mother five weeks of custody makeup time. After careful review, we affirm.

Mother and Father married in 1994 and divorced in 2012. Child was born in January 2000. At the time of the hearing in this matter, the parties were subject to a final custody order entered November 2, 2015, as modified by an order entered April 4, 2016. The orders awarded primary physical custody of Child to Mother and partial physical custody to Father every Monday and Thursday from 4:00 p.m. until 8:00 p.m. and every Friday from 4:00 p.m.

until noon on Saturday. Father also exercised partial physical custody on alternating Saturdays from noon until Sunday at 6:00 p.m. The orders awarded sole legal custody to Mother with respect to medical, dental, and orthodontic matters, and shared legal custody in all other respects.

By way of background, Child is autistic, suffers from obsessive-compulsive disorder and anxiety, and functions within the borderline range of intelligence with an IQ of 72. N.T., 10/30/2017 & 10/31/2017, at 38, 44. Child takes medication and attends speech therapy and a social skills group in order to address these concerns. Id. at 49, 60, 96. On May 27, 2016, Father presented the trial court with a petition to modify legal custody for medical decisions.[1] In his petition, Father averred that Mother was neglecting Child's medical care and cancelling his therapy sessions. Father further averred that Mother is an alcoholic, and that her alcohol abuse poses a threat to Child. The court scheduled a hearing on Father's petition for February 1, 2017.

The remaining factual and procedural history of this matter centers around a car accident that took place on November 15, 2016. Mother's cousin, J.K., was caring for Child that day because Mother was working. Id. at 51. While J.K. was driving Child to lunch, she suffered a coughing fit and crashed into a telephone pole. Id. at 187-88. Child complained of chest pain and was

_____

[1] The record reveals that the pleadings in this matter were presented to the trial court in person and then filed several days later.

taken to the hospital.[2]  Id. at 53.  When Mother arrived at Child's bedside, he became upset and yelled, "Dad said that you . . . would try to harm me."  Id. at 54.  Child also accused J.K. of having alcohol in her travel mug.  Id. at 56.  Father took custody of Child after he was discharged from the hospital, stating that he would return Child to Mother's care later that evening.  Id. at 58.  However, when Mother attempted to retrieve Child, Father insisted that Child did not feel safe with her and would spend the night at his home.  Id. at 59.  Child sent Mother a text message from Father's phone stating the same thing.  Id.

On December 5, 2016, Mother presented the trial court with a petition for special relief, contempt, and hearing date.  Therein, Mother averred that she had no contact with Child since the afternoon of the car accident and that Father was refusing to return Child to her care.  Mother requested that the court direct Father to return Child and schedule a hearing to address Father's contemptuous behavior.  Father presented an answer to Mother's petition, in which he averred that Child was refusing to return to Mother.

The trial court entered an order directing that Father return Child to Mother on December 7, 2016.  The court further directed that it would address Mother's contempt allegations during the hearing on Father's petition to

---

[2] Child did not suffer any injuries other than bruising from his seatbelt.  N.T., 10/30/2017 & 10/31/2017, at 56.

- 3 -

modify legal custody for medical decisions on February 1, 2017. The court scheduled an expedited conciliation to occur on December 19, 2016.

On December 21, 2016, the trial court entered an interim order of court again directing the parties to comply with the existing custody schedule. The court continued generally the hearing on Father's petition to modify legal custody for medical decisions and Mother's contempt allegations, directing that either party could praecipe to reschedule the hearing. The court scheduled a review conciliation for May 4, 2017.

On May 18, 2017, the trial court entered an order amending Father's petition to modify legal custody for medical decisions to include a request for modification of physical custody. The court consolidated Father's petition with Mother's previously filed petition for special relief, contempt, and hearing date, and indicated that it would schedule a hearing on the petitions once a date became available.

Father presented the trial court with an additional petition for modification of custody on May 26, 2017. Father averred that Child was insisting that he live with Father rather than Mother. On June 5, 2017, the court once again entered an order consolidating Father's petition with Mother's previously filed petition for special relief, contempt, and hearing date. The court scheduled a hearing on the petitions for October 30, 2017, and October 31, 2017.

On October 24, 2017, Mother presented the trial court with a petition for contempt and to consolidate hearing date. Mother averred that Father had instructed Child's psychiatrist to wean him off his current medication in violation of Mother's sole legal custody with respect to medical matters. Mother requested that the court consolidate her petition with the other petitions awaiting a hearing. The court granted Mother's request by order entered October 26, 2017.

Finally, the trial court conducted a hearing on October 30, 2017 and October 31, 2017.[3] On November 9, 2017, the court entered the order complained of on appeal. The court found Father in contempt of the physical custody provisions of its prior orders, sanctioned him $20,000 in counsel fees payable at $300 per month, and denied his request for modification of custody. The court found that Father was not in contempt of the legal custody provisions of its prior orders. The court also awarded Mother five weeks of custody makeup time with Child. The court supplemented its order with detailed findings of fact on November 20, 2017. Also on November 20, 2017, the trial court modified its November 9, 2017 order slightly in response to an emergency motion for special relief presented by Father.[4] Father presented the court with a pro se emergency motion for stay and motion to appoint a

_____

[3] Father's counsel withdrew after filing Father's second petition for modification of custody and Father appeared at the hearing pro se.

[4] Father's motion is not contained in the certified record.

guardian ad litem on November 29, 2017. Father requested that the court stay its prior order until Child completed counseling and appoint a guardian ad litem for Child. The court denied Father's motion on December 1, 2017.

Father timely filed a pro se notice of appeal on December 6, 2017. That same day, the trial court directed Father to file a concise statement of errors complained of on appeal. Father complied by filing a pro se concise statement on December 14, 2017.[5]

In his statement of questions involved, Father lists the following claims:

A. Did the Court abuse its discretion and/or err as a matter of law by denying Father's Petition for Custody Modification without properly considering the desires of Child, who was seventeen (17) years old and gainfully employed at the time?

B. Did the Court abuse its discretion when it sanctioned Father $20,000.00 in attorney's fees without first determining whether he afford [sic] to pay it?

C. Did the Court abuse its discretion by granting Mother's motion in limine to exclude evidence prior to October 22, 2015, only to allow Mother to proffer such evidence while denying said opportunity to Father?

D. Did the Court abuse its discretion by improperly considering testimony from expert witness Jody Shemansky, which was beyond the scope of her established expertise?

_____

[5] Father violated Pa.R.A.P. 1925(a)(2)(i) by failing to file a concise statement at the same time as his notice of appeal. We have accepted Father's concise statement pursuant to In re K.T.E.L., 983 A.2d 745, 748 (Pa. Super. 2009) (holding that the appellant's failure to comply strictly with Pa.R.A.P. 1925(a)(2)(i) did not warrant waiver of her claims, as there was no prejudice to any party).

E. Did the Court abuse its discretion by considering and giving weight to hearsay statements concerning Father's alleged disparaging statements to Child concerning Mother?

F. Did the Court abuse its discretion by using inferring [sic] ill intent on the part of Father which was not supported by direct evidence but rather by the prejudicial assertions and suppositions of biased witnesses?

G. Did the Court exceed its proper authority by imposing unfair and unreasonable affirmative duties on Father to "redirect" and "challenge" Child's "paranoid thoughts" at every turn?

Father's brief at 7-8.

At the outset, we must address whether Father preserved his claims for our review. In his concise statement, Father raised only two claims: "Child . . . wants to live with Father" and "Father can not [sic] afford counsel fees." Concise Statement, 12/14/2017 (unnecessary capitalization omitted). It is well settled that any claim not included in a concise statement is waived. In re M.Z.T.M.W., 163 A.3d 462, 466 (Pa. Super. 2017). Therefore, Father waived his claims relating to the trial court's evidentiary rulings, including issues C, D, and E.[6]

_____

[6] Even if Father had included these claims in his concise statement, he would have waived them by failing to make timely and specific objections. Father agreed on the record with Mother's motion in limine and failed to make any objections during the custody hearing. See State Farm Mut. Auto. Ins. Co. v. Dill, 108 A.3d 882, 885 (Pa. Super. 2015), appeal denied, 116 A.3d 605 (Pa. 2015) (quoting Lockley v. CSX Transp. Inc., 66 A.3d 322, 325 (Pa. Super. 2013), appeal denied, 74 A.3d 127 (Pa. 2013)) ("'It is axiomatic that [i]n order to preserve an issue for appellate review, a party must make a timely and specific objection at the appropriate stage of the proceedings before the trial court. Failure to timely object to a basic and fundamental error will result in waiver of that issue.'").

Moreover, Father failed to develop his four remaining claims regarding the trial court's custody decision and award of counsel fees in his brief. Father's brief is often rambling and difficult to decipher, and he fails to cite any legal authority other than standards of review and cases dealing with jurisdiction and the finality of the order on appeal. "'[W]here an appellate brief fails to provide any discussion of a claim with citation to relevant authority or fails to develop the issue in any other meaningful fashion capable of review, that claim is waived.'" In re W.H., 25 A.3d 330, 339 n.3 (Pa. Super. 2011), appeal denied, 24 A.3d 364 (2011) (quoting In re A.C., 991 A.2d 884, 897 (Pa. Super. 2010)).

Nonetheless, even if Father had not waived his challenges to the trial court's custody decision and award of counsel fees, we would conclude that he is not entitled to relief. Our standard of review is as follows:

> In reviewing a custody order, our scope is of the broadest type and our standard is abuse of discretion. We must accept findings of the trial court that are supported by competent evidence of record, as our role does not include making independent factual determinations. In addition, with regard to issues of credibility and weight of the evidence, we must defer to the presiding trial judge who viewed and assessed the witnesses first-hand. However, we are not bound by the trial court's deductions or inferences from its factual findings. Ultimately, the test is whether the trial court's conclusions are unreasonable as shown by the evidence of record. We may reject the conclusions of the trial court only if they involve an error of law, or are unreasonable in light of the sustainable findings of the trial court.

V.B. v. J.E.B., 55 A.3d 1193, 1197 (Pa. Super. 2012) (citations omitted).

When a trial court makes an award of custody, the best interest of the child is paramount.  S.W.D. v. S.A.R., 96 A.3d 396, 400 (Pa. Super. 2014). The factors to be considered by a court when awarding custody are set forth at 23 Pa.C.S.A. § 5328(a):

> (a) Factors.--In ordering any form of custody, the court shall determine the best interest of the child by considering all relevant factors, giving weighted consideration to those factors which affect the safety of the child, including the following:
>
> > (1) Which party is more likely to encourage and permit frequent and continuing contact between the child and another party.
> >
> > (2) The present and past abuse committed by a party or member of the party's household, whether there is a continued risk of harm to the child or an abused party and which party can better provide adequate physical safeguards and supervision of the child.
> >
> > (2.1) The information set forth in section 5329.1(a) (relating to consideration of child abuse and involvement with protective services).
> >
> > (3) The parental duties performed by each party on behalf of the child.
> >
> > (4) The need for stability and continuity in the child's education, family life and community life.
> >
> > (5) The availability of extended family.
> >
> > (6) The child's sibling relationships.
> >
> > (7) The well-reasoned preference of the child, based on the child's maturity and judgment.
> >
> > (8) The attempts of a parent to turn the child against the other parent, except in cases of domestic violence

where reasonable safety measures are necessary to protect the child from harm.

(9) Which party is more likely to maintain a loving, stable, consistent and nurturing relationship with the child adequate for the child's emotional needs.

(10) Which party is more likely to attend to the daily physical, emotional, developmental, educational and special needs of the child.

(11) The proximity of the residences of the parties.

(12) Each party's availability to care for the child or ability to make appropriate child-care arrangements.

(13) The level of conflict between the parties and the willingness and ability of the parties to cooperate with one another. A party's effort to protect a child from abuse by another party is not evidence of unwillingness or inability to cooperate with that party.

(14) The history of drug or alcohol abuse of a party or member of a party's household.

(15) The mental and physical condition of a party or member of a party's household.

(16) Any other relevant factor.

23 Pa.C.S.A. § 5328(a).

With respect to the trial court's decision to find Father in contempt and award counsel fees to Mother, our child custody statute provides as follows, in relevant part:

(g) Contempt for noncompliance with any custody order.—

(1) A party who willfully fails to comply with any custody order may, as prescribed by general rule, be

adjudged in contempt. Contempt shall be punishable by any one or more of the following:

\* \* \*

(v) Counsel fees and costs.

23 Pa.C.S.A. § 5323(g)(1).

In order to support a finding of civil contempt, the petitioning party must prove by a preponderance of the evidence: "(1) that the contemnor had notice of the specific order or decree which he is alleged to have disobeyed; (2) that the act constituting the contemnor's violation was volitional; and (3) that the contemnor acted with wrongful intent." Coffman v. Kline, 167 A.3d 772, 780 (Pa. Super. 2017) (quoting Sutch v. Roxborough Memorial Hosp., 142 A.3d 38, 67-68 (Pa. Super. 2016), appeal denied, 163 A.3d 399 (Pa. 2016)).

In this case, the trial court entered detailed findings of fact on November 20, 2017, discussing each of the Section 5328(a) factors[7] as well as its finding of contempt and award of counsel fees. Findings of Fact, 11/20/2017, at ¶ 15-121. The court found that Father took advantage of the car accident on November 15, 2016, by using it to alienate Child from Mother. Id. Father then used Child's refusal to return to Mother's care as an excuse to violate the prior custody orders. Id.

_____

[7] The trial court did not separately address Section 5328(a)(2.1). However, our review of the record does not reveal any evidence relevant to this factor.

The trial court issued a separate opinion on February 5, 2018. In its opinion, the court indicated that Father's challenge to its custody decision is now moot because Child is eighteen years old. Trial Court Opinion, 2/5/2018, at 16. With respect to its contempt finding and award of counsel fees, the court reiterated its previous conclusion that Father deliberately alienated Child from Mother and then refused to return Child to Mother's care in violation of its prior orders. Id. at 18-21.

Initially, we agree with the trial court that Father's challenge to its child custody decision is moot.

> As a general rule, an actual case or controversy must exist at all stages of the judicial process, or a case will be dismissed as moot. An issue can become moot during the pendency of an appeal due to an intervening change in the facts of the case or due to an intervening change in the applicable law. In that case, an opinion of this Court is rendered advisory in nature. An issue before a court is moot if in ruling upon the issue the court cannot enter an order that has any legal force or effect. . . .

In re D.A., 801 A.2d 614, 616 (Pa. Super. 2002) (citations and quotation marks omitted).

As the trial court explained in its opinion, Child turned eighteen in January 2018 and the custody provisions of the court's order are no longer in force. Therefore, even if we were to agree with Father that the trial court abused its discretion by declining to modify custody, we could not enter an order that would have any legal effect. See K.W. v. S.L., 157 A.3d 498, 499 n.1 (Pa. Super. 2017) (explaining that this Court would not review an interim

custody order that was no longer in force, because any claim relating to that order would be moot).

Moreover, the record is replete with evidence supporting the trial court's finding of contempt and award of counsel fees. At the time of the custody hearing on October 30, 2017, and October 31, 2017, it was undisputed that Child had not returned to Mother's care in nearly a year, since the car accident on November 15, 2016. During his testimony, Father described only one attempt to return Child to Mother. N.T., 10/30/2017 & 10/31/2017, at 310. Additionally, Father testified that he only punished Child once in an effort to gain his cooperation. Id. at 311. Father explained that he took Child's computer away "[f]or a day or two" and then returned it to him. Id. Father claimed that he did not attempt to punish Child again because "I feel like I've tried everything in my means to make him go there. If I take his computer away forever because he doesn't go to his mom's house, what does that prove? [Child] is a very strong-willed child." Id.

Perhaps the most compelling testimony presented during the hearing was that of the family's former therapist, Alyssa Pirain, M.A. Ms. Pirain testified that she met with Child, Mother, and Father for a series of therapy sessions beginning shortly after the car accident. Id. at 12. Ms. Pirain recalled that Child "was extremely agitated, very angry, [and] very upset" during their first session. Id. at 14. Child stated that Mother and the other members of her family "are always secretly drunk" and explained that he received this

information from Father. Id. at 15. Child also appeared to be upset about money, stating that he and Father "have no money because mom takes it."[8] Id. Child shouted repeatedly, "mom's a liar," and did not want to be in the same room with her. Id. at 16-17.

Child became increasingly agitated in subsequent therapy sessions. Id. at 20, 29. Ms. Pirain testified that Child "would always look to dad for confirmation or what he wanted him to say," but that Father would do nothing to redirect Child's paranoid thoughts. Id. at 21-22. Father would not even look at Mother during sessions. Id. at 23. Ms. Pirain explained, "[Father] usually put his hand . . . so he didn't have to see her out of the peripheral vision. . . . and [Child] followed the same thing but with a pillow." Id. at 23-24. Father would say positive things about Mother when Ms. Pirain prompted him to do so. Id. at 24-25. However, Ms. Pirain suspected that Father was saying one thing during the sessions and another thing outside of the sessions. Id. at 25-26. She explained,

> . . . . I think that outside of the room he would say the opposite of what he would say in the room because [Child] periodically would say, but, dad, you said this, and now dad would say something different in the room. So [Child] got very confused, and then would get very agitated and upset and angry.

Id. at 25-26.

_____

[8] This appears to be a reference to Father's child support obligation.

Additionally, Father admitted to Ms. Pirain that he was still angry and resentful toward Mother due to the circumstances of their divorce. Id. at 17-18, 22. Ms. Pirain testified that Father criticized Mother's parenting abilities and accused her of drinking in front of Child. Id. at 17, 22. Father claimed that he knew Mother was drinking because "he knows her, and he knows her behaviors." Id. at 28. Father also admitted that he provided Child with "not kid friendly information," but disagreed with Ms. Pirain that this was inappropriate. Id. at 22-23.

Ms. Pirain testified that she ultimately ended therapy sessions with the family because Child would become physically violent "[w]hen I would start to question [him] as far as being able to love his mother." Id. at 29. She described an incident during which Child "tried to take my bookshelf and knock it overtop of me. He was slamming doors. He ripped one of my doors in my office off the hinges . . . ." Id. Ms. Pirain asked Father to intervene and help calm Child, but he initially failed to comply. Id. When Father did attempt to calm Child, he was unable to do so. Id. at 30.

Thus, the record overwhelmingly supports the trial court's finding that Father is in contempt of its prior custody orders. Father incited paranoia and fear in Child, and then used the resulting parental alienation as an excuse not to return Child to Mother's care. Father's behavior resulted in a nearly yearlong ordeal during which Mother incurred over $20,000 in counsel fees. N.T., 10/30/2017 & 10/31/2017, at 109. It was within the court's discretion

to sanction Father by requiring him to pay the fees. Father's ability to pay is not a relevant consideration. See Hopkins v. Byes, 954 A.2d 654, 659 (Pa. Super. 2008) ("We conclude the court did not err or abuse its discretion by imposing $500 attorney's fees as a sanction, without first ascertaining mother's ability to pay.").

However, even if Father's ability to pay were a relevant consideration, the trial court discussed Father's financial situation in its opinion. The court explained that Father is employed as a truck driver, and that he indicated during an equitable distribution proceeding in 2012 that he earns nearly $55,000 per year.[9] Trial Court Opinion, 2/5/2018, at 20. The court found that its sanction against Father was not excessive based on his employment. Id. We also observe that the court ordered Father to pay Mother's counsel fees in monthly $300 dollar increments, which will allow Father to pay off the balance slowly over the course of approximately five and a half years.

Based on the foregoing, we affirm the trial court's November 9, 2017 order granting Mother's petition for contempt, sanctioning Father $20,000 in counsel fees, denying Father's petition for modification of custody, and awarding Mother five weeks of custody makeup time.

Order affirmed.

_____

[9] This figure is included in Father's May 21, 2012, pre-trial statement, which is contained in the certified record. Father does not challenge the accuracy of this figure on appeal.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 6/4/2018